MOBIL OIL CORPORATION & another[1] *vs.* JOHN
ROUMELIOTIS.

No. 94-P-1177.

Suffolk. October 11, 1994. - March 16, 1995.

Present: SMITH, FINE, & IRELAND, JJ.*

*Practice, Civil,* Interlocutory appeal, Report. *Workers' Compensation Act,*
Common employment, Independent contractor. *Agency,* Independent
contractor.

The court concluded that, on the record before the Industrial Accident
Reviewing Board, the operator of a service station, who was without
workers' compensation coverage in violation of G. L. c. 152, § 25A,
was a buyer and seller of petroleum products in his own right in his
purchasing gasoline from an oil company and was not an independent
contractor doing part of the oil company's business, with the result that
an employee of the service station, injured in a robbery in the course of
his employment, could not maintain a claim for benefits under G. L. c.
152, § 18, against the oil company. [248-251]

APPEAL from a decision of the Industrial Accident Re-
viewing Board.

The appeal of the board's decision and an appeal of the
allowance of a motion for a stay of judgment were consoli-
dated and reported by *Brown,* J.

*Norman P. Beane, Jr.,* for Mobil Oil Corporation &
another.

*Paul A. Gargano* for the employee.

SMITH, J. This is an appeal by the Mobil Oil Company
(Mobil) and its insurer for workers' compensation, National
Union Fire Insurance Company (National), of a decision by
the Industrial Accident Reviewing Board (board) ruling that

---

[1]National Union Fire Insurance Company.

*Justice Fine participated in the deliberation of this case prior to her
retirement.

Mobil was liable for workers' compensation benefits to be paid, pursuant to G. L. c. 152, § 18, to John Roumeliotis (employee).[2] The statute provides, among other things, that "[i]f an insured employer contracts to have part of his work done by an uninsured independent contractor and an employee of such an uninsured independent contractor suffers an industrial injury, . . . the [insured employer] must pay the compensation provided by the act . . . . To come within the statute, the particular activity in which the employees of an independent contractor are engaged must be a 'part of or process in' the trade or business conducted by the insured principal and not 'merely ancillary and incidental' thereto." Locke, Workmen's Compensation § 152, at 162 (1981).

The facts underlying the controversy are not in dispute. The employee was employed by George Popa, doing business as Huntington Auto Service (Popa), a sole proprietorship located at 670 Huntington Avenue, Boston. Popa was in the business of selling gasoline, and providing automobile repair and towing services. On April 22, 1983, Popa entered into a contract with Mobil in which Popa agreed to purchase between 300,000 and 600,000 gallons of gasoline per year from Mobil for a period of three years beginning May 1, 1983, and ending April 30, 1986. Popa also entered into a contract with Mobil, entitled "Sign and equipment rent rider," in which Popa agreed to lease one twelve foot sign and one im-

---

[2]General Laws c. 152, § 18, as amended through St. 1939, c. 93, states in relevant part:

"If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons . . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured . . . ."

printer from Mobil for a lease period beginning May 1, 1983, to continue for a period of three years.

On November 2, 1984, the employee was working at the service station. A robbery occurred during which the employee was assaulted and severely beaten resulting in serious injuries. Popa, at the time of the employee's injuries, was without workers' compensation coverage in violation of G. L. c. 152, § 25A.[3]

The employee filed a claim against Mobil, contending that G. L. c. 152, § 18, controlled the matter. After a conference (G. L. c. 152, § 10A), the employee's claim was denied. The employee appealed and, after a hearing, an administrative judge ruled against him. The employee then filed an appeal with the board. See G. L. c. 152, § 11C.

The board, in a two-to-one decision, reversed the administrative judge's decision. The majority ruled that Popa was an independent contractor engaged by Mobil to do its work. The majority further ruled that the work performed by Popa was part of Mobil's business and was not merely ancillary and incidental to Mobil's business. In contrast, the administrative law judge who wrote the minority opinion stated that Popa was not an independent contractor and that the relationship between Popa and Mobil was that of buyer and seller. The minority judge also ruled that there was a lack of proof as to whether Popa was doing Mobil's work.

As a result of the board's decision, the matter was remanded to the administrative judge to determine the employee's average weekly wages and to enter an appropriate order consistent with the board's opinion. Mobil, however, filed an appeal of the board's decision and also filed a motion requesting a stay of judgment pending an appeal. A single justice of this court allowed the motion for a stay of judgment and the employee filed an appeal regarding the allow-

---

[3]The injury predated the establishment of the Workers' Compensation Trust Fund which, among other things, would pay benefits "resulting from approved claims against employers . . . who are uninsured in violation of [G. L. c. 152]." G. L. c. 152, § 65(2)(*e*). On appeal, the employee does not claim that the trust fund applies to this matter.

ance of the stay. The single justice consolidated both appeals and reported the matters to the full bench. No judgment has been entered as to the board's decision ruling against Mobil and, therefore, Mobil's appeal is interlocutory.

We deem the report of the single justice to be a grant of leave to take an interlocutory appeal of the board's decision to the full bench, and, therefore, we consider the merits of the board's decision concluding that Mobil was liable to the employee under G. L. c. 152, § 18. Because of our decision, the employee's appeal from the single justice's order granting a stay of the judgment is dismissed.

The first issue to be resolved is whether Popa is "a dealer buying and selling petroleum products in his own right . . . or an independent contractor doing part of [Mobil's] work." Locke, Workmen's Compensation § 152, at 163. In determining whether the service station owner is an independent contractor doing part of the oil company's business, a key factor is the amount of control that the oil company exerts over the operator of the service station.

The relationship between Popa and Mobil closely resembles the one described in *Whitehouse* v. *Cities Serv. Oil Co.,* 315 Mass. 108 (1943). In *Whitehouse,* the injured worker was employed by Albert Culver Co. (Culver), a distributor of, among other things, petroleum products. Culver had entered into a contract with Cities Service Oil Company (Cities Service) to buy certain petroleum products from Cities Service. The employee was injured on Cities Service's premises and brought a tort action against that company. Cities Service, as a defense, claimed that Culver had entered into a contract to perform Cities Service's work and, therefore, argued that the "common employment doctrine" of the worker's compensation act barred the employee's action.[4] The court addressed the issue of the relationship between Culver and Cities Service to determine "whether the stipulated facts, which included the written contract, were sufficient to support the contention of [Cities Service], or at least

---

[4]The "common employment doctrine" was eliminated by St. 1971, c. 941. See Locke, Workmen's Compensation § 663.

sufficient to present a question of fact, that Culver was an independent contractor performing the oil company's work." *Id.* at 111.

The court observed that Cities Service controlled certain aspects of Culver's operation of its business through various conditions stated in the contract. The court noted that "[t]he goods that Culver bought from [Cities Service] were to be resold only in the territory described in the contract at prices posted by [Cities Service], and a provision was required in all [of the contracts that Cities Service made] with its customers that they could resell only at the said posted prices." *Ibid.* In addition, Culver "agreed to paint its bulk and service stations, station equipment, pumps and tank trucks in the customary colors employed by [Cities Service]." *Ibid.*

The court, in reaching its decision, recited other stipulated facts concerning the relationship between Cities Service and Culver. It noted that Culver bought and paid for goods that it purchased from Cities Service. The goods belonged to Culver, and it could resell them to any customer it chose within the territory described in the contract. The proceeds of its sales belonged to Culver. It was under no obligation to furnish Cities Service with a list of customers or in any way to account to Cities Service for any transaction Culver had with its customers. *Ibid.* The court concluded, based on the contract and the stipulated facts, that "Culver conducted its own business, selling to its own customers and receiving as its only compensation whatever profits accrued from the business. Culver was paid nothing by [Cities Service]. No part of the regular business of [Cities Service] was entrusted to Culver . . . . [T]he only relationship that [the contract] created was that of buyer and seller." *Id.* at 111-112.

Here, the contract contained some conditions imposed by Mobil on Popa's operation of his gasoline station. It required Popa, among other things, (1) to render "prompt, fair, courteous and efficient service" and not to engage in unethical or deceptive practices in the conduct of its business; (2) to comply strictly with all terms, conditions, requirements, and provisions regarding the use of Mobil credit cards; and (3) to

use Mobil's trademarks and brand names to identify Mobil's products. The contract, as the majority opinion states, also "identifies as the 'very essence of this contract' that [Popa] is obligated to conduct its own business according to Mobil requirements in order 'to promote the sale of [Mobil] products and to refrain from conduct that would lower public acceptance of Mobil's branded dealers.' [Popa] is obligated 'to conduct its business so as to meet or exceed [Mobil's] high standards.' "

The contract, however, did not require Mobil to pay Popa for any work that Popa might perform; rather, Popa was required to pay Mobil for the purchase of gasoline. Further, as the administrative law judge who dissented from the board's decision notes, "Mobil neither owns nor leases the property, has no right to inspect or supervise, and has no control over the retail price of its gasoline, the hours of operation, the hiring or training of employees, the vehicle service operation, or other products [Popa] might sell or lease." The fact that Popa rented a Mobil sign and was required by the contract to use Mobil's trademarks and brand names to identify Mobil's products is not controlling. Such trademarks and signs represent nothing more than a "statement that [Mobil] gasoline was sold at the station." *Sherman* v. *Texas Co.*, 340 Mass. 606, 608-609 (1960). We conclude that Mobil did not hire Popa as an independent contractor to do part of Mobil's work. The sole relationship created by the contract was that of buyer and seller.

Moreover, the employee failed to demonstrate that Popa was engaged in doing Mobil's work. The purpose of § 18 is instructive on this point: "to prevent . . . [an insured person] from escaping the obligation of the compensation act by *letting out a part of his work* to irresponsible subcontractors or independent contractors" (emphasis added). *Cannon* v. *Crowley*, 318 Mass. 373, 375 (1945). Therefore, a significant consideration is whether the work contracted out to the independent contractor is the kind of work "customarily . . . carried on as part of the business in which the insured is engaged." *Tindall* v. *Denholm & McKay Co.*, 347 Mass. 100,

105 (1964). See *Poirier* v. *Plymouth*, 374 Mass. 206, 218 (1978).

The opinion of the majority of the board states, among other things, that Popa is performing Mobil's work because "Mobil is engaged in marketing its own products [and Popa] engages in selling those products to consumers, an essential component of the marketing function." But as the minority opinion points out "every major oil company engages in a *wholesale* merchandising function" (emphasis supplied). In this matter, the question is whether Mobil, as part of its regular business, sold gasoline at *retail*. There was nothing in the record before the board that demonstrated that Mobil owned, leased, or operated gas stations or that it and its employees engaged in either the retail sale of gasoline or vehicle repairs in Massachusetts or anywhere else.

The decision of the Industrial Accident Reviewing Board is reversed. The matter is remanded to the board for the entry of an order dismissing the employee's action. The appeal from the single jutice's order denying a stay is dismissed, not on the merits, but because it is moot.

*So ordered.*