RAMON PARADOA *vs.* CNA INSURANCE COMPANY.

No. 95-P-390.

Suffolk. September 11, 1996. - November 19, 1996.

Present: PERRETTA, KASS, & LENK, JJ.

*Agency,* Independent contractor. *Workers' Compensation Act,* Emotional distress. *Emotional Distress.*

In an action brought by a plaintiff receiving workers' compensation benefits against the insurer for intentional infliction of emotional distress, there was insufficient evidence of the insurer's control over three independent contractors, an examining physician and two private investigators employed by agencies under contract to the insurer to investigate and report on the plaintiff's condition, to warrant the imposition of liability for the contractors' tortious actions. [653-655]

CIVIL ACTION commenced in the Superior Court Department on July 29, 1992.

The case was tried before *Thayer Fremont-Smith,* J., and a motion for reconsideration was heard by him.

*Thomas J. Chirokas* for the plaintiff.

*Alice Olsen Mann (Linda J. Molumphy* with her) for the defendant.

KASS, J. On an appeal from a directed verdict for the defendant CNA Insurance Company (CNA), we are asked to decide whether CNA exercised a degree of control over three independent contractors (an examining physician and two private investigators) sufficient to render CNA liable for their tortious conduct. We conclude that there was not such control and that CNA's motion for a directed verdict was rightly allowed[1]; accordingly, we affirm the judgment.

---

[1]When CNA made its motion for a directed verdict at the close of the plaintiff's evidence, and did so again at the close of all the evidence (see Mass. R.Civ.P. 50[a], 365 Mass. 814 [1974]) the trial judge denied them. After three days of deliberation, the jury failed to reach a verdict, and the judge

These are the pertinent facts, taking the evidence in a light most favorable to the plaintiff Paradoa. *H.P. Hood & Sons, Inc.* v. *Ford Motor Co.*, 370 Mass. 69, 71-72 (1976). *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 751 (1993). Paradoa suffered a job-related back injury in August, 1986, and began receiving disability payments from his employer's workers' compensation insurer, CNA. Some two years after the disabling incident, CNA ordered a medical examination of Paradoa by an orthopedist. In so doing, CNA was exercising a right conferred upon insurers by G. L. c. 152, § 45, to require that recipients of benefits submit to follow-up medical examinations, at the insurer's expense, to determine whether any change in the disabling physical condition of the employee had occurred.

CNA made its request to have Paradoa examined through Preferred Medical Evaluations, Inc. (PME), which is in the business of arranging for medical examinations by doctors in the relevant area of specialty, e.g., an orthopedist or neurologist for a back injury. PME's customers are primarily insurance companies that want to verify disability. It has a roster of doctors with whom it sets up appointments. The place of examination is PME's office, rather than the offices of the various doctors. PME bills its customers and, in turn, pays a fee per examination to the physician or surgeon who performed it and filed a report. The reports are sent to its customers by PME. When PME pays doctors whom it has engaged, it withholds no taxes or social security charges, and it provides no benefits. PME does not direct how persons referred by its insurance industry customers shall be examined.

In Paradoa's case, PME, over a period of four and one-half years, scheduled nine appointments with Douglas Howard, M.D., an orthopedist. PME's letters to Paradoa stated that "CNA Insurance" or "the above referenced insurance company" "has arranged for you to be examined." In those encounters, Dr. Howard subjected Paradoa to verbal and physical insults. The doctor suggested repeatedly that Paradoa's disability was exaggerated, at best, or feigned at

thereupon reconsidered the motion for a directed verdict and allowed it. See Mass.R.Civ.P. 50(b), 365 Mass. 815 (1974), which provides, "If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

worst. There were remarks about fleecing the insurance company. Compounding those assaults on his dignity, were assaults on his person in the form of subjection to bending motions which were painful but which Dr. Howard nonetheless pressed on repeated occasions.

In addition, CNA had at varying times engaged the services of private investigating agencies to conduct what were known as "activities checks," to determine if Paradoa continued to be as disabled as he claimed. The first investigation was conducted by Casualty, Life & Surety Companies' Claims Bureau (Claims) and the second by Century Investigation Agency (Century). Investigators from those agencies verbally harassed Paradoa and members of his family. The investigators identified themselves as acting for CNA. There was no evidence that CNA owned an interest in, or was affiliated with Claims or Century. Similarly, there was no evidence that CNA had any interest in, or affiliation with, PME.

Paradoa's action against CNA was for intentional infliction of emotional distress, based on acts by Dr. Howard and the private investigators employed by the two investigating agencies.

It is unrebutted on the record that PME, Claims, and Century are freestanding business entities, in which CNA has neither stock nor other kind of interest. They deliver their services to anyone who hires them. The customers, in the case of PME and Claims, are almost entirely insurance companies; Century has a somewhat more general customer base. There is no evidence that any of the three business entities was subject to control by CNA of the physical conduct of its work. Each was an independent contractor. See *Chase* v. *Independent Practice Assn.*, 31 Mass. App. Ct. 661, 665-666 (1991); *Mobil Oil Corp.* v. *Roumeliotis*, 38 Mass. App. Ct. 245, 248-250 (1995); Restatement (Second) of Agency § 2(3) (1958). Indeed, as the *Chase* case illustrates, in relation to PME, Dr. Howard was an independent contractor as he received no salary from PME nor were there any other indicia that he was an employee of PME, rather than someone whose professional services PME engaged on an occasional basis. *Chase* v. *Independent Practice Assn.*, 31 Mass. App. Ct. at 665-666. See also *Kelley* v. *Rossi*, 395 Mass. 659, 662 (1985).

That PME, Claims, and Century were independent contractors in relation to CNA is not the end of the inquiry. A person

who hires an independent contractor to do certain work may be liable for the tortious conduct of the independent contractor if the employer has retained control of part of the work that the independent contractor performs. *Corsetti* v. *Stone Co.*, 396 Mass. 1, 9-11 (1985). *St. Germaine* v. *Pendergast*, 411 Mass. 615, 622-623 (1992). *McNamara* v. *Massachusetts Port Authy.*, 30 Mass. App. Ct. 716, 718-719 (1991). *Dilaveris* v. *W.T. Rich Co.*, 39 Mass. App. Ct. 115, 121, further appellate review granted, 421 Mass. 1105 (1995). *Foley* v. *Rust Intl.*, 901 F.2d 183, 184-185 (1st Cir. 1990). Restatement (Second) of Torts § 414 (1965). An employer of a service company may lack the pervasive control that would cause the service company to be a servant rather than an independent contractor while yet maintaining sufficient control over an aspect of the particular task to incur liability. The classic illustration is the general contractor who retains control over safety on a construction project and thereby becomes liable for a failure in adherence to safety standards by a subcontractor. See *Corsetti* v. *Stone Co.*, 396 Mass. at 11-12.

While control over the task need not descend to the last detail of method or operation for the imposition of liability to result, the retention of control must be such "that the [independent] contractor is not entirely free to do the work in [its] own way." Restatement (Second) of Torts § 414 comment c. Indicia of such direction or retention of right to direct are absent. First, there is no evidence of communication from CNA to PME, to Claims or to Century, other than orders for periodic medical examinations to PME and orders for activities checks to Claims and to Century. CNA never spoke directly with Dr. Howard or the investigators. Second, CNA provided no instruction or protocol to PME, Claims, or Century, or to Howard and the investigators as to the manner it wanted work on its behalf conducted. Third, CNA did not supervise the medical examinations or investigations or ask for amplification of reports that were filed by Dr. Howard and the investigators. Finally, Dr. Howard and the investigators billed the agencies that hired them, not CNA, and were paid by those agencies. Far from purporting to control PME, Claims, and Century, the conclusion compelled by the evidence is that CNA contracted out work to them when needed and left to them the manner and means.

Paradoa suggests that there was evidence allowing a jury to

infer the requisite degree of control but what he offers makes no logical connection to the issue of control. First, he points to the form letters from PME which said CNA had arranged for him to be examined. To be sure, but CNA's arrangement did not go beyond requesting that an examination be conducted. The location of the examination was an office of PME, and all responses by Paradoa were made to PME. That Dr. Howard said that he was conducting the examination for CNA stated no more than that simple fact, and his bullying and sneering attitude (taking the evidence in the light most favorable to the plaintiff) bespeaks a mind-set favorable to insurance companies, a source of work; his attitude does not speak to the issue of control. Dr. Howard's failure to appear as a witness, although summoned under subpoena by CNA, does not permit a reasonable inference that CNA controlled the manner in which he conducted medical examinations.

In light of the absence of evidence permitting the inference that CNA controlled in some significant fashion the freedom with which PME, Claims, and Century, and their employees went about their business on behalf of CNA, the trial judge rightly directed a verdict for the defendant.[2] Having decided the case on the basis of control, we do not consider CNA's argument that Paradoa's claim was barred by G. L. c. 152, § 24, because CNA, in ordering the examinations and investigations, was furthering the goals of the workers' compensation act. Compare *Boduch* v. *Aetna Life & Cas. Co.*, 26 Mass. App. Ct. 462, 466 (1988).

There are other claims of error with which we need not deal in view of our decision that the trial judge correctly directed a verdict for the defendant.

*Judgment affirmed.*

---

[2]There was no evidence of awareness by CNA of a pattern of oppressive conduct by PME, Claims, Century or their employees which might support an action founded on a theory of negligent employment or negligent supervision.