Brassard, J.
The defendant in this action, Boston Medical Evaluations, Inc. (“BME”), has moved for summary judgment alleging that it cannot be held vicariously liable for the tortious conduct of Dr. Murray Goodman, M.D. (“Dr. Goodman”), another defendant in this action. Specifically, BME argues that it is entitled to judgment as a matter of law because Dr. Goodman is an independent contractor over whom BME retained no control, and there was no showing of reliance by the plaintiff upon representations made by BME that Dr. Goodman was its agent or employee. In opposition, the plaintiff argues that genuine issues of material fact remain in dispute. For the following reasons, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The facts, taken in the light most favorable to the plaintiff, are as follows.
Boston Medical Evaluations, Inc. (“BME”) is a company that provides cost containment and health care management services. One aspect of its business involves arranging for independent medical examinations, designed to determine the nature, extent, and cause of an alleged injury, and whether any medical treatment is warranted given the circumstances. BME maintains a roster of hundreds of independent physicians and other health care professionals in various specialties, who are available to perform independent medical examinations on an as-needed basis. The physicians and other health care professionals who perform independent medical examinations at BME’s request have their own independent practices, patients, offices, hospital affiliations, and privileges. They are not employees of BME, but rather are retained as independent contractors to perform examinations from time to time.
BME pays the medical provider a flat fee for each medical examination performed. When BME compensates physicians whom it has engaged, it withholds no taxes, and it provides no benefits. BME provides year-end tax information to the physicians as independent contractors, through a Form 1099. BME does not exercise any control over the means and methods utilized by physicians in conducting their examinations; it is the physician, in the exercise of his or her sole professional judgment, that makes this determination and performs the examination that is most suitable given the circumstances.
In 1993, the plaintiff, Gary Stephen Harding (“Harding”), sustained a work-related injury to his left knee. CIGNA Insurance Co., Inc. (“CIGNA”), Harding’s workers’ compensation carrier, required that Harding undergo an independent medical examination in order to continue receiving workers’ compensation benefits. CIGNA requested that BME arrange an independent medical examination of Harding. BME arranged for Dr. Murray Goodman, M.D. (“Dr. Goodman”), another defendant in this action, to conduct an independent medical examination of Harding on October 7, 1997 and provided an examination room in BME’s offices in Medford, Massachusetts. Dr. Goodman is an orthopedic surgeon with his own medical practice, which is a business entity completely separate from BME.
On or about October 7, 1997, Dr. Goodman performed the independent medical examination as mandated by CIGNA. No BME employee was present in the examination room during Dr. Goodman’s examination of Harding. Harding alleges that Dr. Goodman examined his knee in a manner that exacerbated his injury.
On February 19, 1999, Harding filed the present action alleging negligence (Count I) and battery (Count II) as to all defendants.
DISCUSSION
Summary judgment is appropriate when there are no material facts in dispute and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56. The moving party bears the burden of affirmatively demonstrating the absence of a triable factual issue and of showing that it is entitled to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). Once the moving party demonstrates the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a material factual dispute. Id. at 17. Summary judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in *288 essence there is no real dispute as to the salient facts or if only a question of law is involved.” Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
BME argues that it is entitled to summary judgment because Dr. Goodman was an independent contractor, and BME retained no right to control the manner and means in which Dr. Goodman conducted his examination of Harding. Harding contends that BME should be held liable for the actions of Dr. Goodman under a theory of either actual or apparent agency.
I. Actual Agency
The traditional common law test of agency provides a number of factors that courts must consider in determining whether a relationship is one of employee/agent or that of an independent contractor. See Dykes v. DePuy, Inc., 140 F.3d 31, 37-38 (1st Cir. 1998); Speen v. Crown Clothing Corp., etal., 102 F.3d 625, 630-31 (1st Cir. 1996). Although the right to control a party’s activities has been the guiding principle in determining vicarious liability, the court also considers other factors including: the right to control the details of the work done, the method of payment, the skill required in the particular occupation, whether the employer supplies the tools, instrumentalities and place of work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the hiring party’s role in hiring and paying assistants, the provision of employee benefits, the tax treatment of the hired party, and the parties’ own belief as to whether they are creating a master-servant relationship. Id.
“Because of the high level of skill involved in the practice of medicine, physicians have traditionally been viewed as independent contractors.” See Chase v. Independent Practice Assn., Inc., 31 Mass.App.Ct. 661, 665 (1991). Nonetheless, a “person who hires an independent contractor to do certain work may be liable for the tortious conduct of the independent contractor if the employer has retained control of part of the work that the independent contractor performs.” See Paradoa v. CNA Ins. Co., 41 Mass.App.Ct. 651, 653-54 (1996); Corsetti v. Stone Co., 396 Mass. 1, 9-11 (1985).
The facts of this case are much like those in Paradoa. In Paradoa, the plaintiff sued CNA Insurance Company (“CNA”), his workers’ compensation carrier, for intentional infliction of emotional distress based, in part, on a medical examination of the plaintiff mandated by CNA. Paradoa, 41 Mass.App.Ct. at 652. CNA retained Preferred Medical Evaluations, Inc. (“PME”) to arrange for an independent medical examination of the plaintiff. Id. PME contacted an orthopedist and arranged for an examination of the plaintiff at PME’s offices. Id. PME paid a fee per examination to the physician, but withheld no taxes or social security charges and provided no benefits. Id. PME did not retain any right to direct physicians in the manner in which patients were examined. Id.
The Appeals Court held that CNA did not retain the right to direct or control the orthopedist and dismissed the plaintiffs claim. Paradoa, 41 Mass.App.Ct. at 651, 654. In so doing, the Court relied on four factors in making its decision: (1) there was no evidence of communication from CNA to PME other than orders for periodic medical examinations; (2) CNA provided no instruction or protocol to PME or Dr. Howard as to the manner it wanted work on its behalf conducted; (3) CNA did not supervise the medical examination; and (4) Dr. Howard billed the agency that hired him, not CNA. Id. at 654.
Applying these factors to the case at bar, the court finds that BME had no control over Dr. Goodman’s actions nor the manner in which he manipulated Harding’s knee during the examination. BME responded to CIGNA’s request and arranged for an independent medical examination of Harding. It is undisputed that Dr. Goodman was an independent contractor of BME when he examined Harding. Other than arranging for Dr. Goodman’s independent medical examination of Harding and providing an examination room at BME’s offices, BME gave no direction to and had no knowledge of or control over the manner in which Dr. Goodman conducted his examination of Harding. Dr. Goodman was free to exercise his sole professional judgment in determining the manner and means in which he conducted the examination.
II. Apparent Agency
Although it is undisputed that Dr. Goodman was an independent contractor, Harding alternatively argues that BME can be held liable under a theory of apparent agency. Apparent agency “results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent. If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.” See Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 16 (1997).
In Chase, the Appeals Court held that absent a factual basis in the record to support the patient’s allegations that he relied upon representations made by the defendant, Independent Practice Association (“IPA”), that the physician was its agent or employee, IPA was not vicariously liable for the physician’s alleged negligence under a theory of apparent agency. See Chase, 31 Mass.App.Ct. at 666-67. In that case, the patient brought a medical malpractice action against a physician, a health maintenance organization (“HMO"), and IPA which contracted to arrange for health services and provided physicians for HMO members. Id. at 661. The court found that IPA did not control, or retain the right to control, the professional activities of the physician, and responsibility for the *289 actual provision of medical treatment rested with the physician. Id. at 666-67. The court also found that IPA was not liable under a theory of apparent agency because the plaintiff failed to show a reliance upon representations made by IPA that the physician was its agent or employee. Id. at 667-68. The plaintiff did not allege that she believed that the physician was an employee or agent of IPA, and her statement that she was not made aware that the doctors were not employees of the HMO was insufficient to raise a claim of apparent agency. Id.
In the present case, Harding has presented no evidence to demonstrate that he relied upon representations made by BME, or that such representations were actually made. Other than the fact that the examination took place in BME’s offices, there is no factual basis in the record to support a theory that Harding relied upon any representations. His contention that Dr. Goodman was clothed with the apparent authority of BME because he conducted the examination on BME property and utilized its facilities and support staff is without merit. To establish apparent agency, Harding must prove not only a reasonable belief that Dr. Goodman was an employee or agent of BME, but also that this belief was caused by the manifestations of BME made directly or through trademarks, signs, or advertising. See Loynd v. Emerson Hospital, 2001 WL 417281 (Super.Ct. 2001) (J. Houston) [[13 Mass. L. Rptr. 61]. The fact that the examination took place in BME’s offices and that the plaintiff was not informed of the employment status of his treating physician do not create a genuine issue of material fact as to the existence of any apparent authority.[2] See id. It is essential under the theory of vicarious liability based on apparent agency for the record to indicate how, to what extent, and under what circumstances the plaintiff came to believe that Dr. Goodman was employed by BME, and the reasonableness of this belief. See id.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.

 Harding testified at his deposition that the BME company name or logo did not appear on any of Dr. Goodman’s clothing. Harding indicated that he had assumed Dr. Goodman worked for BME only because “he was in a BME office and works out of those offices.”