In re HIDDEN LAKE LIMITED PARTNERSHIP, Debtor.

No. 98–57219.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Feb. 24, 2000.

Carol G. Stebbins, Mount Vernon, OH, for debtor.

Richard F. Casher, Bingham Dana, LLP, Hartford, CT, Richard K. Stovall, Thompson, Hine & Flory, LLP, Columbus, OH, for Aetna Life Insurance Company.

Kenneth P. Kreider, Keating, Muethling & Klekamp, Cincinnati, OH, for HLS Partnership.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO CLAIM OF AETNA LIFE INSURANCE COMPANY*

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the objections of Hidden Lake Limited Part-

nership ("Debtor") and HLS Partnership ("HLS"), a creditor in this case, to the proof of claim filed by Aetna Life Insurance Company ("Aetna"). Aetna opposed the objection and the Court heard the matter on November 8, 1999. The parties filed certain post-hearing briefs and the matter is now ready for decision.

## I. Jurisdiction

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## II. Preliminary Evidentiary Issue

At the conclusion of its case, Aetna asked the Court to admit into evidence portions of the deposition of an expert witness, previously identified by the Debtor, who was not called at trial.

The Debtor objected to the admission of this deposition as hearsay. Aetna maintains that the testimony is the admission of an agent of the Debtor and, therefore, not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence.

The Court has reviewed the cases cited by the parties. The leading cases are *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980) and *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3rd Cir.1995), *cert. denied*, 516 U.S. 1145, 116 S.Ct. 1015, 134 L.Ed.2d 95 (1996). In *Collins*, the deposition of a manufacturer's expert was determined to be admissible as the admission of the manufacturer. In *Kirk* the Court found that the testimony of the manufacturer's expert in a prior, unrelated action was hearsay in the subsequent suit and was not admissible.

Under either *Collins* or *Kirk*, a more extensive showing would be required than what Aetna has presented here. There has been no identification of specific portions of the deposition of the Debtor's expert which are sought to be admitted. *See* Fed.R.Evid. 103(a)(2). Nor has there been any evidence introduced or proffered to show that the expert is, in fact, an agent of the Debtor.

The witness in *Collins* was an investigative agent hired by the defendant shortly after an accident to investigate certain facts surrounding that accident and make a report. *Collins* at 782. The witness identified by the Debtor for purposes of the objection to Aetna's claim is the principal in a mortgage banking company over whom the Debtor apparently has no control. Without a showing of actual control over the testimony or conclusions of this witness, the Court agrees with the *Kirk* court that the expert's deposition or prior testimony does not constitute admissions of the Debtor.

As the *Kirk* court stated: " . . . despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness even if one disagrees with the testimony of the expert. Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony." *Kirk* at 164.

Accordingly, the Court finds that the deposition of the expert witness identified by the Debtor, but not called at trial, is not admissible over the Debtor's objection. Such testimony is inadmissible as hearsay. Further, there was no evidence that the witness was unavailable. The Court offered to continue the conclusion of the hearing to a day when the expert at issue could be brought into Court. Aetna did not wish such a continuance and its evidence, therefore, will not include any statements of the Debtor's identified expert.

## III. Background Facts, Stipulated Facts and Facts Established by Testimony

### A. Background Facts

The Debtor is a limited partnership which owns a 258–unit residential apart-

ment complex in Summit County, Ohio. Aetna and the Debtor are parties to an Amended and Restated Secured Promissory Note, dated September 28, 1994 ("Amended Note"). Repayment of the Amended Note is secured by a first mortgage against the apartment complex, including an assignment of rents, and a separate security interest in the complex's rents and leases.

The Debtor filed a chapter 11 bankruptcy petition on July 28, 1998. Both the Debtor and Aetna have proposed plans which are pending before this Court. Resolution of the correct amount of Aetna's claim is necessary before the confirmation hearings can be held.

Aetna's amended proof of claim is in the amount of $15,669,347. That amount is composed of unpaid principal of 11,834,353, prepetition interest at both contract and default interest rates of $1,356,101, late charges of $37,511, prepetition collection costs of $63,710, and a prepayment charge in the amount of $2,699,487. Aetna also has received payments of $321,815 since the Debtor's bankruptcy filing. Although the Debtor's objection initially challenged several aspects of Aetna's claim, the only matter now contested by HLS and the Debtor is the enforceability of the prepayment charge.

### B. *Stipulated Facts*

The Debtor, HLS and Aetna agreed that the prepayment charge is calculated correctly pursuant to the Amended Note. That agreement, however, did not include any concession by the Debtor or HLS that the charge is enforceable or that the Amended Note provided a definitive time for such a calculation to occur. If the Court should find that the prepayment charge is enforceable and that its time of calculation is the date used by Aetna, then the Debtor and HLS concede that the mathematical calculation in the proof of claim is correct.

The parties further agreed that prepayment charge clauses are standard and customary in loan documents for commercial real estate loans, that the terms in this prepayment charge are typical, and that use of the yield of securities issued by the United States Treasury that mature at approximately the same time as the mortgage note at issue generally provides the basis for deriving present value calculations.

### C. *Facts Established by the Evidence*

Four witnesses testified at the hearing. From their testimony, the Court finds the following facts.

Investment Resources, Inc. ("IRI"), the managing general partner of the Debtor, first became involved with the Debtor in 1988 when the Debtor's other general partner requested IRI to participate in the initial permanent loan financing with Aetna ("1988 Note"). At that time Chemical Mortgage Co. ("Chemical"), the loan originator, represented Aetna in those negotiations. Much of the loan application process and some negotiations of loan terms occurred prior to IRI's involvement. IRI participated in additional meetings at which the Debtor and Chemical discussed terms of the 1988 Note. IRI executed the loan documents as a representative of the Debtor.

The 1988 Note included a provision for a prepayment charge. The loan application described acceleration as an event which would be deemed to be a prepayment. IRI was not involved with that loan application process, however, and the acceleration/prepayment charge relationship was never discussed between Chemical or Aetna and IRI. IRI attempted to negotiate the terms of the prepayment charge, which it believed were very onerous for the Debtor, but Chemical represented that those terms were not negotiable. In fact, no negotiations occurred about the inclusion of the prepayment charge, the events which triggered its application or the formula which provided for its calculation. At IRI's request Aetna provided hypothetical calculations showing the prepayment charge with varying assumptions about the

time of the prepayment and the rate in effect for comparable treasury securities at the time of prepayment. IRI understood both that the prepayment charge could effectively preclude the Debtor from any refinancing of the loan and that Aetna would not make the loan without the prepayment charge provision. There was no discussion of the clause as a "liquidated damages" provision.

The Debtor experienced difficulty in generating sufficient revenues from the property to pay its operating expenses and the payments to Aetna. In September 1994 the Debtor and Aetna entered into the Amended Note which is the source of Aetna's claim in this bankruptcy case.

Restructure of the Debtor's obligation to Aetna lowered the interest rate to 6 1/4% for the first year, 7 3/4% for the second year and 9% for the third year. The interest rate for the remaining term of the Amended Note then returned to the 10 1/4% rate called for in the 1988 Note. The Debtor also agreed to pay Aetna any available cash, as defined by the parties, during the remaining term of the Amended Note. The shortfall between the 1988 Note rate and the rates provided during the first three years of the Amended Note was capitalized and added to the principal balance of the Amended Note. IRI again attempted to change the prepayment charge, but Aetna rejected any such modification. IRI was a signatory on behalf of the Debtor to the Amended Note, an Appreciation Interest Promissory Note, and an Amended and Restated Mortgage and Security Agreement. The maturity date of the Amended Note is May 1, 2004.

In 1997, after three years of decreased interest rates, the Debtor still had difficulty paying all of its operating expenses and servicing the loan at the interest rate of 10 1/4%. IRI then began a search for potential refinancing. Although there was HUD financing available for similar real estate projects at a rate of 7.3% at that time, the large amount required to satisfy the prepayment charge made such refinancing impossible.

In late 1997 the Debtor defaulted on its payments. Aetna then accelerated the loan, began a foreclosure action, had a receiver appointed for the property and invoked the default interest rate of 16.25%. It was not until after its bankruptcy filing in July of 1998, however, that the Debtor become aware that Aetna also was asserting a prepayment charge in connection with the loan acceleration.

The Debtor has proposed a plan of reorganization which includes a discount factor of 7.75% for Aetna's allowed secured claim. If the prepayment charge is calculated as of January 1, 1998, and the market rate of interest which Aetna could obtain is presumed to be 7.75% instead of the Treasury note rate of 5.8%, the charge would be reduced by $1,272,410. Use of a later starting date would result in fewer payment periods prior to the maturity/balloon payment date of May 1, 2004, and, therefore, would further reduce the present value calculation.

Aetna relies on Sections 2.8 and 4.1 of the Amended Note for its entitlement to a prepayment charge calculated to provide an amount which could be reinvested in an alternate investment and still maintain the return to Aetna promised in the Amended Note. The cash flow stream thereby calculated by reference to a Treasury obligation is also discounted to present value. Aetna has committed the yield it is to receive from this and other loans it has made to long term investment contracts it has with institutional investors.

There are significant variables which make the exact calculation of potential losses from a prepayment difficult to calculate. Such variables include the loan amount and term remaining and the interest rate available at the time of a prepayment. It is also difficult to know if a suitable reinvestment vehicle will be available. In 1988 Aetna had a corporate policy prohibiting loans secured by commercial real estate, but that policy is no longer in effect. Although many of the factors which are difficult to ascertain at the time

a loan is entered into would be more certain if evaluated at the time of default or prepayment, the pricing of any reinvestment loan would not be known until such a loan was closed. For a similar loan secured by commercial real estate, Aetna would expect a minimum return of 250 basis points over the comparable Treasury obligation.

In reliance on § 4.1 of the Amended Note, Aetna used January 1, 1998 as the starting date to calculate the prepayment charge of $2,699,487. That date was the first day of the month following the Debtor's default. Payments of interest to Aetna called for under the Debtor's plan were not considered in the calculation. The prepayment charge is approximately 25% of the principal amount claimed and 20% of the total claim.

Aetna drafted the Amended Note and binding letter agreement sent to the Debtor in August of 1993. There is nothing in either the Amended Note or the letter agreement which states explicitly that the date of acceleration shall be deemed to be the date of the prepayment. Section 2.8 of the Amended Note provides that the prepayment charge will be due and payable in the event of any voluntary or involuntary prepayment (including acceleration) and that the charge will be calculated within three days prior to the date of prepayment. Section 4.1 specifically makes the prepayment charge due upon Aetna's acceleration for default in payment. Acceleration occurred December 18, 1997. No actual prepayment has occurred.

Aetna regards the prepayment charge as a liquidated damages provision which seeks to capture all of the interest that would have been paid if no prepayment had occurred and any administrative costs of doing business attributable to this loan. Expenses incurred to enforce its loan rights after default are separately provided for in the Amended Note and in the mortgage. Aetna has no policy which would require prepaid funds specifically to be reinvested in Treasury obligations. There is a range of reinvestments available, including securitized loan packages. Nor is there any requirement imposed by the contract with an institutional investor for which this loan is targeted that requires Aetna to keep this investment with the Debtor in place.

The prepayment clause is recognized as part of a long term loan agreement under which a borrower gets a fixed rate of interest. If such clauses did not apply to acceleration for default as well as to prepayment, a borrower could cause a loan to go into default in order to pay prior to maturity and thereby avoid the prepayment charge. Lenders view acceleration and prepayment as producing the same economic uncertainty about getting the sums due.

According to Aetna's expert, a current market rate of interest for a ten-year fixed-rate loan secured by a mortgage on multi-family residential real property is between 7 3/4% and 8%. Yield maintenance formulas in prepayment clauses occasionally use basis points over the Treasury obligation rate, but lenders rarely negotiate on the prepayment charge and unilaterally impose such clauses. In the circumstance where a lender is imposing and collecting a default rate of interest on an accelerated loan and is also receiving payments on principal and interest, damage to the lender because of the borrower's default may be hard to determine.

## IV. *Issues of Law*

The issues presented to the court by the testimony and briefs are:

A. Is the prepayment charge included in Aetna's claim enforceable under state law as a liquidated damages provision, as required by 11 U.S.C. § 502(b)(1); and

B. Is the inclusion of the prepayment charge a claim for unmatured interest which is barred by 11 U.S.C. § 502(b)(2).

## V. *Discussion of Legal Issues*

### A. *The Prepayment Clause as a Liquidated Damages Provision*

The Debtor and HLS allege that the provision for a prepayment penalty was not negotiated between the parties; that it was not intended by the parties as an estimate of actual damages; and that actual damages were capable of determination. They also argue that the formula rate overcompensates Aetna, which could and would reinvest any prepaid funds at 200 to 250 basis points over the rate in the prepayment clause. Such a result causes the amount to be disproportionately higher than any reasonable expectation of actual damages. The Debtor and HLS further argue that the language of the Amended Note does not provide for calculation of the prepayment charge amount as imposed by Aetna, and that imposition of the charge under the circumstances is inappropriate.

Aetna asserts that the Amended Note provision is a valid liquidated damages provision under Ohio law; that the calculation is certain; and that the calculation is as provided for in the Amended Note and in agreements between the parties. Aetna maintains that its actual damages are hard to estimate prior to a breach and that the formula used is objective and fair.

 Analysis of a contractual provision as a liquidated damages provision or a penalty is a question of law for the Court. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380, 613 N.E.2d 183, 187 (1993). The legal principles upon which such a determination must be made are governed by state law. In addition, there are bankruptcy considerations which may come into play.

 In Ohio, the state law principles have been set forth for many years. The Ohio Supreme Court has determined that any analysis of a liquidated damages clause requires that the court:

(1) find a clear and unambiguous agreement in the contract relating to the estimation and adjustment of damages which would be uncertain as to amount and difficult to prove upon a default;

(2) find that the contract itself is not so manifestly unconscionable, unreasonable, or disproportionate in amount that adjustment and estimation of damages could not be what the parties intended; and

(3) find that the contract is consistent with a conclusion that the parties intended damages in the agreed-upon amount for its breach.

*Id.* at 382, 613 N.E.2d at 188, *quoting Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 at syllabus (1984).

The Court believes the particular circumstances present in this case may not have been what the parties most likely were contemplating when they agreed to the prepayment charge in the Amended Note. Acceleration is often treated as a prepayment because it is generally followed by a forced or consensual sale of the collateral or by a refinance of the debt and a payoff. In some fashion, after the acceleration, the borrower is taken off the loan and the lender does not receive the stream of payments for which it contracted. Such circumstances probably were what these parties contemplated when the prepayment clause was made part of their agreement. Actual prepayment has not occurred, however, and the Debtor's proposed plan of reorganization does not contemplate early repayment.

Upholding this prepayment charge as a valid liquidated damages provision will seriously deter this Debtor's ability to utilize the federal bankruptcy laws to reorganize. The amount imposed by the charge will overcompensate Aetna if the Debtor's plan is confirmed and Aetna continues to receive payments on the obligation. However, the Court is not free to impose its view on this issue.

The contract provision for a prepayment charge was known to both parties when

the contract was executed. The more commonly expected breaches (actual prepayment upon a refinancing of the loan for a more favorable interest rate or actual repayment after a post-default sale of the property) produce a situation where loss to the lender would be hard to estimate at the time the loan is closed because of the inability to predict future interest rates and the uncertainty of the availability of a suitable substitute investment opportunity for the lender. Use of the Treasury obligation as a reference point for the calculation, although generally overcompensating Aetna, is not an unreasonable estimate. The fact that the normal progression after acceleration has not occurred here probably is not sufficient under Ohio law to invalidate the provision.

In reaching this conclusion the Court is guided by the *Lake Ridge Academy* case and by *Demczyk v. Mutual Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823 (6th Cir.1997).

In *Lake Ridge Academy* the Ohio Supreme Court specifically analyzed the contract as a whole. The unreasonableness of one set of potential circumstances was not the thrust of the analysis. 66 Ohio St.3d at 383–84, 613 N.E.2d at 189–90. Even though the court spoke generally of concerns about a lack of real bargaining and an inability to negotiate terms in a meaningful fashion, it found that test to be whether each party had a reasonable chance of understanding the terms of the contract, given their relative education, sophistication and experience. The fact that both parties were educated and dealt at arms length was important in the court's finding. *Id.* Even though there was a dispute about whether the damages imposed by the liquidated damages provision were disproportionate to the actual damages, the majority easily found such reasonableness. *Id.*

Even more compelling is the *Graham Square* holding. The relevant issue in that case was the enforceability of a commitment fee provision in a loan application. The court was most concerned with the issue of whether a liquidated damages clause, such as the commitment fee provision, was intended as compensation for a breach or as punishment for the breaching party. *Graham Square* at 828. The court realized that such an analysis required examination of the proportionality of the "imposed damages" to the probable actual damages. *Id.* The examination focused on what the parties knew at the time the contract was formed. The provision would be upheld unless the court could find, after looking at the contract as a whole, that the agreed-upon amount was unreasonable as a matter of law. *Id.* at 829.

█ This Court finds that the prepayment clause in the Amended Note executed by the Debtor and Aetna provided compensation to Aetna in the event of a breach by the Debtor which attempted to estimate probable damages under most circumstances. Although the amount of damages calculation under the yield maintenance formula generally would overcompensate Aetna, the amount of that overcompensation, given the uncertainties accompanying the prediction of probable actual damages, was not so great that this Court could find, as a matter of law, that the prepayment clause was intended to punish the Debtor rather than compensate Aetna. There is no dispute that both parties were knowledgeable, had a reasonable chance to understand the terms of the agreement and were sufficiently sophisticated and experienced to be aware of the import of their agreement.

In all honesty, uncertainties exist about whether the Debtor will be able to obtain confirmation of its plan and whether it will be able to execute that plan should it be confirmed. Given those uncertainties, the finding of a compensatory intent under all other known breach circumstances, and the reasonableness of the contract as a whole, this Court finds that neither the *Lake Ridge Academy* nor the *Graham Square* courts would invalidate this provision. Therefore, this Court will enforce

the prepayment clause as a valid liquidated damages provision under state law.

In this holding the Court has considered the arguments of the Debtor and HLS about the difficulties of ascertaining the starting date for the calculation of the prepayment penalty under the language of §§ 2.8 and 4.1 of the Amended Note. The Court agrees that the language could be more specific and clearer and that the fault for that lies with Aetna. Nevertheless, the Court finds reasonable Aetna's interpretation that acceleration of the debt acts as a prepayment for the purpose of beginning the calculation. An alternate interpretation, that the beginning date would be sometime in the month prior to that selected, is also reasonable. The date selected benefits the borrower and, therefore, will be found to be an acceptable construction of those sections of the Amended Note. Interpreting the "date of prepayment" in § 2.8 as including the date of acceleration which triggers the prepayment charge gives a consistent meaning to that section and appears to the Court to be consistent with the intention of the parties. The Debtor and HLS' interpretation that actual prepayment is required to trigger the formula calculation is not reasonable.

### B. The Prepayment Charge as a Claim for Unmatured Interest

The Debtor and HLS also argue that the prepayment charge should not be allowed as part of Aetna's claim because the charge actually is a claim for unmatured interest which is barred by 11 U.S.C. § 502(b)(2). Aetna contends that the prepayment charge is not matured, is not "interest" and is a proper part of its claim.

The Court agrees that it should look to the substance of a claim component rather than to the name given to that component. In addition, § 502(b)(2) does not allow a claim to include unmatured interest. The problem with that argument in this circumstance, however, is that Aetna's entitlement to the prepayment charge arose upon acceleration of its debt. That event occurred many months before the

Debtor filed this bankruptcy case. The charge matured at the time the debt was accelerated for default under the terms of the Amended Note. Consequently, even though the purpose for the provision was to capture the return on Aetna's investment which could be lost upon a default in payments, the charge is more than and different from an "unmatured interest" assessment. It may in reality represent estimated interest, but it is not unmatured after December of 1998.

Had Aetna's note contained an acceleration right exercisable upon the filing of a bankruptcy petition and had there been no prepetition acceleration, the result might be different. Under the facts of this case, however, the Court agrees with the existing case law that a prepayment charge imposed prepetition is not a claim for unmatured interest within the meaning of § 502(b)(2). See In re Skyler Ridge, 80 B.R. 500, 508 (Bankr.C.D.Cal.1987) and In re Outdoor Sports Headquarters, Inc., 161 B.R. 414, 424 (Bankr.S.D.Ohio 1993). Accordingly, the prepayment charge will not be disallowed as unmatured interest.

### VI. Conclusion

Based on the foregoing, the objection of the Debtor and HLS to the allowance of the prepayment charge in the proof of claim filed by Aetna is **OVERRULED**. Aetna's claim, unless objected to on other bases as the result of this opinion, will be allowed as filed in the amount of $15,669,347.

**IT IS SO ORDERED.**