**In re SCHWEGMANN GIANT SUPER MARKETS, Debtor.**

No. CIV.A.01–2716.

United States District Court, E.D. Louisiana.

March 19, 2002.

---

Roy Clifton Cheatwood, Hansel Mark Harlan, Phelps Dunbar, LLP, New Orleans, LA, for Monumental Life Ins. Co.

Emile Louis Turner, Jr., Turner, Young, Habbler & Babin, New Orleans, LA, Gary K. McKenzie, Steffes, Vingiello & McKenzie, Baton Rouge, LA, Richard W. Martinez, Martinez & Buser, LLC, New Orleans, LA, for Schwegmann Giant Super Markets.

Robin Bryan Cheatham, Adams & Reese, New Orleans, LA, for Atel Cash Distribution Fund and Textron Financial Corp.

Douglas Deane Dodd, Andrew D. Mendez, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, for Stone, Pigman, Walther, Wittmann & Hutchinson, LLP.

Rudy J. Cerone, McGlinchey Stafford, PLLC, New Orleans, LA, for National Tea Co.

Diana LaBorde Rachal, New Orleans, LA, U.S. Trustee.

### *ORDER AND REASONS*

PORTEOUS, District Judge.

The Court having considered the appeal from the United States Bankruptcy Court for the Eastern District of District of Loui-

siana, the record, and the applicable law, hereby affirms the Bankruptcy Court ruling.

## STANDARD OF REVIEW

In reviewing a decision of the Bankruptcy Court, the District Court applies a "clearly erroneous" standard of review to findings of fact, and a de novo standard of review to questions of law. See U.S.C. § 158(c); Bankruptcy Rule 8013; and *In re T–H New Orleans Ltd. Partnership,* 116 F.3d 790 (5th Cir.1997). In addition, when reviewing a Bankruptcy Court's determination regarding a disclosure statement, the District Court applies an "abuse of discretion" standard of review. *In re Texas Extrusion Corp.,* 844 F.2d 1142 (5th Cir.1988).

## BACKGROUND

On September 20, 2000, Schwegmann Giant Super Markets (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Debtor has remained in possession of its assets pursuant to an Order entered by the Bankruptcy Court on September 21, 2000.

On November 30, 2000, the Debtor received a Letter of Intent from Home Depot U.S.A., Inc. ("Home Depot") to purchase the property located at 2625 Veterans Memorial, Boulevard, Kenner, Louisiana (the "Property"). On December 21, 2000, Stone, Pigman, Walthier, Wittmann & Hutchinson, L.L.P. ("Stone Pigman") filed a Motion to Compel Debtor to Consummate Sale of Immovable Property (the "Motion to Compel") concerning the aforementioned Property. On January 4, 2001, the Bankruptcy Court granted the Motion to Compel, whereby the Bankruptcy Court compelled the debtor to file a Motion for Expedited Hearing and Motion to Sell Property no later than January 15, 2001.

On February 9, 2001, ATEL Cash Distribution Fund V, L.P. ("ATEL"), Textron Financial Corporation ("Textron"), Schnuck Markets, Inc., Stone Pigman, LDI Corporation and Mellon U.S. Leasing, a Division of Mellon Leasing Corporation, filed a complaint to determine the validity, amount, and priority of liens, bearing adversary no. 01–1026. Contemporaneously therewith, Plaintiff's filed an Ex Parte Motion for Order Requiring Creditors to File Statements of their Claims.

On February 16, 2001, Monumental Life Insurance Company ("Monumental") filed a proof of claim No. 99 ("Proof of Claim"), in the amount of $7,220,356.76 with interest and other charges and fees owing under the loan documents continuing to accrue post petition. On March 19, 2001, Monumental filed its Statement of Claim in the adversary proceeding seeking recovery of prepayment penalties and default interest from the proceeds of the Home Depot Property sale. On April 10, 2001, Monumental filed its Amended Statement of the Claim.

On April 6, 2001, the Debtor filed its Objection to the Claim of Monumental. On April 25, 2001, the Debtor filed its Supplemental Objection to the Claim of Monumental. On that same date, ATEL and Stone Pigman each filed a Memorandum in Support of Debtor's Objection to the Claim of Monumental. Subsequent to a hearing on May 7, 2001, on the Debtor's Objection to Claim of Monumental, Monumental withdrew its Claim for Default Interest.

On June 22, 2001, the Bankruptcy Court entered its reasons for disallowing Monumental's claim for prepayment penalties and allowed Monumental's Claims for attorney's fees, advances, and interest on those advances. Monumental filed its appeal on July 2, 2001.

On July 2, 2001, Monumental filed its Motion to Waive Supersedeas Bond ("Motion") and, contemporaneously therewith, filed its Motion for Expedited Consideration of its Motion to Waive Supersedeas Bond. On July 27, 2001, ATEL and Stone Pigman filed an Opposition to Motion to Waive Supersedeas Bond. On August 7, 2001, an Order was entered granting Monumental's Motion to Waive Supersedeas Bond. On September 21, 2001, Monumental filed its Brief in Support of the Appeal of Monumental. On October 18, 200, Debtor, ATEL, and Stone Pigman filed their respective Appellate Briefs. On November 7, 2001, Monumental filed a Reply Brief in support of its Appeal.[1]

## FACTS

In March of 1991, the Appellant, Monumental, loaned to the "Debtor" the sum of $8,400,000 (the "Loan"). The loan was secured by the Home Depot Property, had a fixed rate of ten and one-eighth percent (10.125%) and a maturity date of April 1, 2010. The Debtor promised not to prepay the loan and agreed that if it did, it would pay an agreed upon Yield Maintenance Premium (The "Yield Maintenance Premium"). The Debtor then prepaid the loan. However, the Debtor refuses to pay the Yield Maintenance Premium, now believing it to be unreasonable. At the trial of the objection, the Bankruptcy Court disallowed the Yield Maintenance Premium.

As an over secured creditor, Monumental, has moved to reverse the Bankruptcy Court's order sustaining, in part, the Debtor's objection to Monumental's claim for the Yield Maintenance Premium in the amount of $1,295,254.44, order the Debtor to instruct the escrow agent to pay that amount, and grant general and equitable relief.

---

**1.** Contemporaneous with the filing of its reply brief, Monumental filed an Ex Parte Motion for Leave to Supplement its Designation of Items to be included in the record on Appeal.

## ISSUES PRESENTED

(1) Whether the Bankruptcy Court erred in finding that the Debtor, ATEL, and Stone Pigman, satisfied their burden of persuasion sufficient to shift the burden of proof back to Monumental to prove the Yield Maintenance Premium provided for in the loan was not unreasonable pursuant to 11 U.S.C. § 506(b)?

(2) Whether the Bankruptcy Court erred in finding that Monumental failed to satisfy the burden of proving that the Yield Maintenance Premium was not unreasonable?

(3) Whether the Bankruptcy Court erred in disallowing Monumental's claim for the Yield Maintenance Premium?

## ARGUMENTS OF THE RESPECTIVE PARTIES

### I. Monumental's Argument

The Bankruptcy Court misapplied certain facts to the applicable statutes (particularly to Fed. R. Bankr.Proc. 3001 and Subsection 506(b) of the Bankruptcy Code) and failed to consider other facts regarding the same statute. Therefore, the primary issue is the applicability of those facts to the implicated statutes.

Monumental alleges that Yield Maintenance Premium should be allowed because it is expressly provided for in the Loan Documents. Moreover, Louisiana state law as well as Federal Bankruptcy law permit recovery of the Yield Maintenance Premium unless it is shown that it is unreasonable. Lastly, the Objectors offered no facts to support their self interested position. Therefore, while bankruptcy courts certainly possess the equitable pow-

This matter was taken up in open court on 11/21/01 and denied for the reasons stated in the record.

ers, those powers do not authorize bankruptcy courts to ignore the otherwise enforceable contractual rights, much less the priorities established by the Bankruptcy Code, in order to distribute more money to the creditors.

## II. Debtor's Argument

There are three main points argued by the Debtor. First, the Court did not err in failing to enforce the prepayment penalty. The applicable law is not 11 U.S.C. § 365, but 11 U.S.C. § 541 of the Bankruptcy Code because congressionally any clause that attempts to exact a penalty on a debtor solely because the debtor filed bankruptcy is not to be considered. 11 U.S.C. § 365 does not apply because it deals with executory contracts and not promissory notes.

Second, the record is void of any further evidence of damages. The Henderson deposition which fails to point to any actual damages, binds Monumental. Third, the proof of the claim and the shifting the burden of proof falls on Monumental.

## III. Objectors' Argument

### A. Stone Pigman

The Bankruptcy Court properly concluded that Monumental failed to sustain its burden of showing that the prepayment penalty was "reasonable" under the statute, and therefore held that it was not entitled to it. Monumental failed to carry its burden of proof. The claimant bears the ultimate burden of proof and here Monumental relied solely on its proof of claim failing to meet its burden. Monumental is, therefore, not entitled to recover prepayment penalties.

### B. ATEL's Argument

First, Monumental is not entitled to a prepayment penalty because the conditions precedent to the imposition of a prepayment penalty are not present in this case.

Second, Monumental failed to meet the requisite burden of proof. Monumental bears the ultimate burden of proving that it is entitled to a prepayment penalty and failed to meet that burden in the instant case. Third, the prepayment penalty sought by Monumental is manifestly unreasonable pursuant to Louisiana state law. Fourth, the prepayment penalty sought by Monumental is unreasonable under 11 U.S.C. § 506(b) of the Bankruptcy Code.

## LAW AND ANALYSIS

### I. Standard of Review

 Monumental sought de novo review when resolving the issues related to the Yield Maintenance Premium contracted for in the loan. Bankruptcy cases appealed to District Court follow a clearly erroneous standard of review regarding questions of fact and a de novo standard of review for conclusions of law. *In re Goerg.*, 930 F.2d 1563 (11th Cir.1991); *In re Harbour Lights Marina Inc. v. Wandstrat*, 153 B.R. 781 (S.D.Ohio 1993). This standard has also been dubbed the "gross miscarriage of justice" standard. *Universal Minerals, Inc. v. Hughes & Co.*, 669 F.2d 98 (3d Cir.1981). The reviewing court uses this clearly erroneous standard even when the lower court's findings do not rest on credibility determinations, but on physical or documentary evidence or inferences from other facts. *Jefferson v. Mississippi Gulf Coast Y.M.C.A.*, 73 B.R. 179 (S.D.Miss.1986).

### II. The Bankruptcy Court properly held that the Debtor, ATEL, and Stone Pigman, satisfied their burden of persuasion sufficient to shift the burden of proof back to Monumental to prove the Yield Maintenance Premium provided for in the loan was not unreasonable.

The Objectors successfully rebutted the presumptively valid reasonableness of the

Yield Maintenance Premium. The Debtor, ATEL, and Stone Pigman satisfied their burden of persuasion sufficient to shift the burden of proof back to Monumental to prove the Yield Maintenance Premium provided for in the loan was not unreasonable pursuant to 11 U.S.C. § 506(b).

■ The proof of claim under Fed. R. Bankr.Pro. 3001(f) provides that a proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr.Pro. 3001(f). The Fifth Circuit has held that an objector to a proof of claim has the burden of producing evidence to rebut the proof of claim. *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir.1988).

■ The ultimate burden of proof lies with the claim that when a claim is disputed the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). The Bankruptcy Court correctly reasoned that because Monumental was claiming damages under a contract with the Debtor (i.e. its loan agreement), Monumental bore the burden of proving its entitlement to the prepayment penalty. Monumental thus had the burden of proving its claimed penalty was a "reasonable fee" within the meaning of that provision of the Bankruptcy Code.

■ During the Bankruptcy Court hearing regarding the Debtor's objection to Monumental's claim, Monumental chose not to offer any evidence to show that the prepayment penalty was reasonable within the meaning of that provision of the Bank-

ruptcy Code. Yet, the Fifth Circuit has established that when an objecting party "produces evidence that is of a probative force equal to that of the creditors proof of claim," the claimant can no longer rest on the prima facie presumption created by his proof of claim. *In re Simmons*, 765 F.2d 547, 552 (5th Cir.1985). Rather the claimant must prove entitlement to the claim by a preponderance of the evidence. *Fidelity Holding Co.*, 837 F.2d at 698. The claimant bears the ultimate burden of proof. *Id.; In re Placid Oil Co.*, 988 F.2d 554, 557 (5th Cir.1993).[2]

■ The Bankruptcy Court held, based on the evidence in the record, that the parties objecting to Monumental's claim had successfully rebutted the prima facie presumption created by Monumental's proof of claim. The Court noted the Objectors introduced evidence to establish that the prepayment penalty was unreasonable, and unenforceable, under 11 U.S.C. § 506(b). The record confirms that the Bankruptcy Court ruled correctly based on the evidence before it.

■ Monumental stipulated that the Debtor's loan was not in monetary default at the time of the bankruptcy filing and that the Debtor's filing for bankruptcy was the sole basis for its claim in the default interest. The Bankruptcy Court correctly considered this relevant evidence because the lack of any pre-petition default bore on the issue of reasonableness of the fee under section 506(b). The absence of any default weighs in favor of finding that the fee was punitive, rather than compensatory, which militates against its enforcement in bankruptcy.

---

2. Without much discussion, Monumental asserted that the Bankruptcy Court misapplied certain facts to Fed. R. Bankr.3001 and 11 U.S.C. § 506(b). However, the holdings from *In re Simmons*, 765 F.2d at 552; *Fidelity*

*Holding Co.*, 837 F.2d at 698; *In re Placid Oil Co.*, 988 F.2d at 557 support the Bankruptcy Court's application of the facts to these provisions

The Objectors also introduced a transcript of the deposition testimony of Monumental's designated 30(b)(6) representative, James D. Henderson.[3] Mr. Henderson's deposition reflects that he had no idea of what damages Monumental may have suffered as a result of the Debtor's prepayment of its loan.[4] Though Monumental belatedly suggests that named represented besides Mr. Henderson could have testified to damages it allegedly suffered as a result of the Debtor's prepayment of the loan, in fact, Monumental failed to produce any testimony in the Bankruptcy Court to support the reasonableness of the claim.

■ The record also shows that the prepayment penalty constituted over 18% of the prepaid loan balance.[5] This is highly relevant because courts that have applied Bankruptcy Code § 506(b) to prepaid loan balances have concluded that the prepayment penalties comprising a percentage of the prepaid amount are unreasonable, and therefore not allowable to over-secured creditors.

■ Finally, the Bankruptcy Court noted that the evidence in the record counter confirmed that some lower ranking, secured creditors would not receive any proceeds from the sale of the Home Depot Property if Monumental received its prepayment penalty. This is another factor properly considered in determining whether a prepayment fee is reasonable under § 506(b).

After considering all of the evidence in the record to counter Monumental's proof of claim, the Bankruptcy Judge determined that, in the words of the Fifth Circuit, the Objectors had put on evidence of probative force, equal to that of the proof of claim. *In re Simmons,* 765 F.2d at 552. The Bankruptcy Court thoughtfully weighed the Objectors' evidence and Monumental's proof of claim, and correctly ruled that the presumption conferred by the proof of claim had been rebutted. Monumental thus had the burden of proving the penalty reasonable, but failed to carry it.

**III. The Bankruptcy Court correctly held that Monumental failed to satisfy the burden of proving that the Yield Maintenance Premium was reasonable.**

**A. The Prepayment Penalty Sought by Monumental is Manifestly Unreasonable Pursuant to Bankruptcy Law.**

The Court did not err in failing to enforce the prepayment penalty because the prepayment penalty sought by Monumental is unreasonable under 11 U.S.C. § 506(b) of the Bankruptcy Code. The Bankruptcy Court applied 11 U.S.C. § 506(b) and utilized the reasonableness test under the requisite provision of the Bankruptcy Code. 11 U.S.C. § 506(b) provides,

> To the extent that an allowed secured claim is secured by property the value of which, after recovery under subsection(c) of this section, is greater than the amount of such claim, interest on such claim, and any **reasonable** fees, costs or charges provided under the agreement under which such claim arose.

11 U.S.C. § 506(b) (Emphasis added).

The Bankruptcy Court then approved the analysis provided in the case of *In re*

---

3. See Trans. of 04/18/01 Depo. of James D. Henderson ["Henderson Depo."]

4. Henderson Depo. at 113:14–22.

5. Total Yield Maintenance owed was $1,295,254.44 where the Outstanding Principal Balance was $7,138,229.81.

*Duralite Truck Body & Container Corp.,* in its inquiry into reasonableness. 153 B.R. 708 (Bankr.D.Md.1993). The Court determined under 11 U.S.C. § 506 that the prepayment penalty was not reasonable, citing among other factors, that the prepayment formula presumed a loss by Monumental which was not shown. The Monumental formula is a formula that results in a prepayment penalty, no matter the outcome.

The penalty does not take into account the possibility that rates may change to the benefit of Monumental. Under the penalty provision, there can be no instance of prepayment where a penalty will not apply. The penalty also applies a floor penalty of 10% and a second prong that allows the penalty to increase significantly. In this instance, the penalty alone would result in a charge to the Debtor, in addition to all those charges already paid, of approximately 18% of the already paid full principal amount. The Court simply concluded that the penalty was unreasonable, as the formula was not an attempt to approximate actual damages and failed to reflect actual damages by charging the penalty, irrespective of result.

Monumental suggested only that the Bankruptcy Court should approve the penalty based on the documents and two cases that were not binding on the Court. The Court appropriately distinguished both of those decisions.

In short, the Court found that *In re Hidden Lake Ltd. Partnership,* 247 B.R. 722 (Bankr.S.D.Ohio 2000), cited by Monumental, differed from the instant matter. In that matter, the creditor, as the party seeking the penalty, put on four witnesses and evidence of the market rates of interest. The *Hidden Lake* court then found

that the prepayment penalty did overcompensate the creditor but not so much that the court could say the penalty's sole purpose was to punish the debtor rather than compensate the creditor for uncertainties.[6] *Id. Hidden Lake* also involved a default note commencement of a foreclosure action and appointment of a keeper prior to filing bankruptcy. The bankruptcy court found these points significant. The particular point of *Hidden Lake* is that the moving creditor went forward with the evidence and attempted to persuade the court by the introduction of specific evidence of the damage that related to the formula in the creditors proof of claim. *Id.* Here, the prepayment premium does not reflect actual damages. Monumental's designated deponent, Mr. Henderson, failed to demonstrate that the prepayment penalty requested reflects actual damages.

The Bankruptcy Court also distinguished *In re Anchor Resolution,* 221 B.R. 330 (Bankr.D.Del.1998). In *Anchor,* there was a pre-petition default where none existed in the instant case. Further, the formula in *Anchor* only charged a penalty if the rates changed in a direction that caused the lender damage from the inability to obtain the same return on the funds once prepaid and reinvested. The Anchor formula only imposed a fee if the rates of return went down.

In contrast, the case at hand has a penalty that applies no matter which way the rates go. There is no way to pay the debt without penalty in the instant case; whereas, in *Anchor,* the creditor charged the penalty only in instances where there was a possible loss and not simply to penalize the prepayment.

---

**6.** The *Hidden Lake* decision applied Ohio state law principles. The court found, on the particular facts and circumstances of that case, that given the uncertainties of payment, the prepayment clause was a valid liquidated damage provision under state law.

The Bankruptcy Court found that the Monumental formula was not reasonable, as among other things, it did not attempt to represent economic damage. Monumental offered nothing to the court to show the damages or that the formula was an attempt to represent damage.

### B. The Prepayment Penalty Sought by Monumental is Manifestly Unreasonable Pursuant to Louisiana State Law

While some stipulated damages are allowed, Louisiana Civil Code articles 2002 and 2012 allow the Court to modify those damages if they would be against public policy. Louisiana employs two Civil Code articles which address the issue of damages. La. C.C.. art.2002 states that, "an obligee must make reasonable efforts to mitigate the damages caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." La.C.C. art. 2002 (West 2002). This article precedes La.C.C. art.2012 which provides that, "stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy." La.C.C. art. 2012 (West 2001).

Aside from the state law provisions for reasonable damages, 11 U.S.C. § 506(b) requires a reasonable standard for damages. In this case, the formula for the premium is unreasonable because the ten percent (10%) is unrelated to the cost of the funds that Monumental had to absorb for the transaction. The alternative calculation is unreasonable because it tacks on an additional one percent on top of the market rate to account for any loss sustained while reinvesting the money. The analysis is therefore flawed because it is unrelated to actual damages.

The formula leads to a calculation of eighteen point fourteen percent (18.14%) of the principal and because the creditors are not over-secured all the Debtor's real property is subject to senior mortgage liens. For example, Bankers Trust has the first mortgage position on Chalmette Plaza and Bank One has first mortgage positions on all other properties out there.

### IV. The Bankruptcy Court did not err in disallowing Monumental's claim for the Yield Maintenance Premium.

 Monumental is not entitled to a prepayment penalty because the conditions precedent to the imposition of a prepayment penalty are not present in this case. The promissory note ("the Note") sets forth two conditions precedent that must be met prior to Monumental's imposition of a prepayment penalty. Paragraph five of the Note allows a prepayment fee where "prepayment of the indebtedness evidenced hereby occurs during a period when this note is closed to prepayment as a result of such default." Therefore, unless there is a foreclosure sale or power of sale granted under the Mortgage, neither of which applies in this case, a prepayment premium will only be imposed if the prepayment occurs at a time when the note is closed to prepayment and the prepayment is the result of "such default." The phrase "as a result of such default" refers to language in Paragraph six of the Note which states, "[t]herefore, if the maturity of this Note is accelerated by reason of any default hereunder or under any other Loan Document .." "Event of default" is defined as, among other events not relevant here, the filing of voluntary bankruptcy petition.

This language is an unenforceable *ispso facto* clause pursuant to 11 U.S.C. § 365(e)(1)(B) because the Note is acceler-

ated upon filing of a bankruptcy petition, which alters the Debtor's contractual rights under the Note. See *In re Texaco*, 73 B.R. 960, 965 (Bankr.S.D.N.Y.1987). As a result, the clause is unenforceable and there was no default under the Note. Therefore, prepayment was not the result of such a default as contemplated in the Note.

The Note was prepaid from the proceeds from the sale of the Property. The sale of the Property was prompted by a motion of creditors to force the Debtor to sell the Property. Thus, there was no voluntary prepayment and the prepayment did not result from a cause contemplated by the Note. As such, neither of the conditions precedent to the imposition of the prepayment premium was present in this case.

The Yield Maintenance Premium is designed to compensate for any damages sustained when there is prepayment on a loan. However, there is very little case law addressing Yield Maintenance Premiums and the record only points to the vague deposition of Henderson, the alleged expert on Yield Maintenance Premiums. Because Henderson failed to explain why the premium exists, or even who would be in the best position to answer that question, Henderson's deposition, at best, frustrates the issue of actual damages.

In light of the federal and state statutes, it would be unreasonable to award the eighteen percent (18%) of the prepayment penalty premium after considering that the principal amount has been paid. Since the Bankruptcy Court did not err in finding that Monumental failed to satisfy their burden, the Bankruptcy Court was correct in disallowing Monumental's claim for the Yield Maintenance Premium. Therefore, the request for the Yield Maintenance Premium is denied.

Accordingly,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the United States Bankruptcy Court for the Eastern District of Louisiana be **AFFIRMED.**