LANCE MONLUX and SHERRIN MONLUX, Plaintiffs-Appellees, and FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Intervenor, *v.* GENERAL MOTORS CORPORATION, Defendant-Appellant

NO. 10195

(CIV. NO. 5426(1))

FEBRUARY 26, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

General Motors Corporation (G.M.) appeals from a judgment awarding Mr. and Mrs. Lance Monlux $158,900 in a personal injury action, averring the Circuit Court of the Second Circuit committed a

number of reversible errors in the course of proceedings.[1] We are convinced from a review of the record that the court erred when it did not admit demonstrative evidence offered by G.M. to counter the testimony of the plaintiffs' expert witness on how the accident probably happened and when it did not admit previously recorded statements of two witnesses after they had been cross-examined on portions thereof by plaintiffs' counsel. The judgment, therefore, is vacated, and the case is remanded for retrial.

I.

Lance Monlux, then a mechanic employed by Haleakala Motors, a G.M. dealer on Maui, sustained an injury while preparing a 1979 Chevrolet Monza automobile for delivery on March 13, 1980. Alleging the injury had been caused by a defect in the vehicle, Monlux and his wife brought a tort action premised on strict liability and negligence against the manufacturer.

The evidence presented by plaintiffs at trial indicated the injury occurred when the car's hood fell on the male plaintiff's neck after he thought he had secured it in a raised position by using a steel rod affixed to the car for that purpose. According to Lance Monlux he raised the hood, moved the rod from a horizontal to an upright position and set the hood down on top of the rod. The upper end of the rod was then in a small depression in the hood's undersurface. He then leaned over and peered into the engine compartment to inspect the wiring, maintaining his balance by holding the upright rod. But the rod gave way, and the hood dropped and hit his neck. When he recovered from the blow and

---

[1]G. M. avers the judgment should be vacated for want of evidence that the Monza was defective when it left the hands of Defendant. It also asserts the circuit court erred:

    (1) in not granting Defendant's motion and jury instructions for a directed verdict;

    (2) in refusing to strike portions of the testimony of plaintiff's expert witness;

    (3) in excluding rebuttal testimony from its expert witness;

    (4) in refusing to admit prior consistent statements of two of its witnesses after portions of the statements had been used by plaintiffs' counsel in cross-examination;

    (5) in not permitting demonstrative evidence offered to rebut the testimony of plaintiffs' expert witness on how the accident probably occurred;

    (6) in refusing several jury instructions offered by G.M.;

    (7) in not granting a new trial on the ground that the jury verdict was excessive; and

    (8) in awarding pre-judgment interest on the awarded sum.

lifted the hood, he noticed the rod had fallen to the floor.

The plaintiffs' claim of a defect in manufacture and the likelihood of the accident happening as described above were supported by their expert witness.[2] In the expert's view the manufacturer's failure to fasten the rod to the vehicle caused the untoward event resulting in injury. He said a small clip or pin that should have held the rod firmly in place and prevented the mishap was missing, and this rendered the Monza defective.

G.M. countered with the testimony of its expert, Walter Zych. Though records pertaining to the assembly of the vehicle were unavailable, Zych's opinion was that the critical cotter pin was in place when the vehicle passed from G.M.'s control.[3] This, he said, was established by the fact that the hood had been raised and held open with the aid of the support rod on numerous occasions from the vehicle's manufacture until it was readied for delivery to the ultimate buyer. If the pin was not in place when the Monza left the factory, he asserted, the rod would have become displaced long before Monlux looked under the hood on the fateful day fifteen months later. And even if the rod were displaced as a consequence of what Monlux said he did, Zych maintained it would not have fallen to the floor and the hood would only have dropped an inch or two. He therefore discounted the probability of the accident happening in the manner described by Lance Monlux.

Answering interrogatories propounded by the trial judge, the jury found the Monza was defective when it left the factory and Lance Monlux was not negligent. And Mr. and Mrs. Monlux, in the jury's considered opinion, suffered damages amounting to $158,900 as a consequence of the injury proximately caused by the defect in the Monza. The award of judgment to the plaintiffs was followed by this appeal by G.M.

## II.

The record on appeal discloses that a crucial factual issue was

---

[2]The plaintiffs' expert was Dr. James Collins, a practicing mechanical engineer versed in the design and manufacture of automobiles.

[3]Collins and Zych agreed that if the pin was firmly in place when Monlux grasped the rod for support, the accident would not have happened.

whether the support rod could have fallen to the floor. Walter Zych discounted Lance Monlux's testimony in this regard, maintaining the configuration of the engine compartment was such that the support rod would have been pushed against the battery and would not have fallen if it had been grasped in the manner described by Monlux. There was no space alongside the battery, Zych claimed, for the rod to pass through and fall.

Collins, however, maintained the accident could have happened as Monlux said it had. The plaintiffs' expert believed the rod could very well have been pushed to one side of the battery where there was space enough for the rod to pass through. The viability of this aspect of the expert's testimony hinged in part on the position and size of the battery installed in the car on the day of the accident.[4] Collins admitted he had not emphasized the significance of this factor during discovery but his opinion and testimony at trial took it into account.

G.M. presented a videotaped demonstration in which an employee of Haleakala Motors pushed the rod against the battery; the videotape did not include a sequence in which the rod was pushed to one side of the battery. After Collins had testified that when the rod was pushed to the left of a smaller battery it would fall, G.M. unsuccessfully sought to introduce rebuttal testimony on what it felt was a new theory.[5] And before the close of evidence, it also sought permission to demonstrate how the Monza's hood support mechanism operated under conditions described by the witnesses. The trial judge denied the request on the ground that the demonstration would only yield cumulative evidence. In effect, he ruled the live presentation would replicate what had already been shown to the jury on video. But G.M. asserts it was not offering the same evidence in another form and the trial judge's denial of permission to stage the demonstration was prejudicial error. We would have to agree.

---

[4]The battery had been replaced before the accident, and the position and exact size of the car's battery when it left the factory were matters in dispute.

[5]It sought, *inter alia,* to recall Mr. Zych and have him testify about "his experiments with the vehicle and whether, given the space around the battery as it was positioned in the battery tray, it would have been possible for any part of the hood support mechanism to be pushed past the battery as Dr. Collins suggested." The plaintiffs' objection that this testimony would be cumulative was sustained.

"[D]emonstrative evidence appeals directly to the senses of the trier of fact, [and] it is today universally felt that this kind of evidence possesses an immediacy and reality which endow it with particularly persuasive effect." E. Cleary, *McCormick on Evidence* § 212, at 664 (3d ed. 1984) (footnote omitted). "At the same time, . . . its use raises certain problems for a juridical system the mechanics of which are essentially geared to the reception of *viva voce* testimony by witnesses." *Id.* Thus, trial judges have traditionally been afforded "broad discretion in ruling upon the admissibility of many types of demonstrative evidence." *Id.* at 665 (footnote omitted).

What G.M. proposed was essentially a demonstration in the form of an experiment. We realize, of course, that the admission of experimental evidence "rests within the sound discretion of the trial court." *Schleunes v. American Casualty Co.,* 528 F.2d 634, 637 (5th Cir. 1976) (citations omitted). Yet, what was proffered was not cumulative or repetitious, and the circumstances were peculiarly appropriate for the proposed experiment.

The video demonstration viewed by the jury was taped in advance of trial to counter what the plaintiffs' expert said when deposed before trial. At trial, however, he espoused a slightly different theory on how the accident happened. G.M. hoped to demonstrate the accident could not have happened as Lance Monlux said it had, even if the "new" factor described by Collins was taken into account. Had permission been granted, the jury would have viewed a test of his theory that the support rod could have been pushed to the left of the battery tray and this would have caused the hood to collapse. We can only conclude the live demonstration would have given the jury evidence it had not seen. And there were other reasons for allowing G.M. to proceed with the experiment.

In-court experimentation is largely subject to the discretion of the trial judge because it "may involve considerable confusion or delay." E. Cleary, *supra,* § 215, at 667. But the experiment for which permission was sought was a relatively simple one, and the trial judge could have minimized confusion or disruption by the due exercise of his authority to control the manner of presentation. Moreover, evidence from which members of the jury could derive their own perceptions probably would have aided them in resolving the sharp conflict in the perceptions of Collins and Zych on a crucial factual issue. "[T]he apparently easy manner of [possibly] resolving the crucial conflicting testimony of witnesses militate[d] for a mechanical demonstration." *Schleunes v. Ameri-*

*can Casualty Co.,* 528 F.2d at 637.

The plaintiffs, however, contend the experiment would not have depicted conditions extant on March 13, 1980. "One desiring to make an experiment in court [must, of course,] first show that the experiment is to be made . . . under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy . . . ." *Ginoza v. Takai Electric Co.,* 40 Haw. 691, 713-14 (1955) (quoting *Franks v. Jirdon,* 146 Neb. 585, 591, 20 N.W.2d 597, 600 (1945) ). But "[i]t is not . . . necessary in order to render experiments permissible . . . that the conditions be identical with those existing at the time of the occurrence; it is sufficient if there is a substantial similarity." *Id.*

G.M. in its offer of proof represented to the court that the very Monza inspected by Monlux on March 13, 1980 was available for the experiment, the support rod therein was the one he grasped, and the battery was of the same size and shape as the one then installed in the car. The conditions and circumstances the plaintiffs said were existing on March 13, 1980 and those under which G.M. would have conducted the experiment, in our opinion, were substantially similar. Inasmuch as the demonstrative evidence was not what the jury had been shown earlier, it could have been presented with a modicum of confusion or delay,[6] it might have helped to resolve crucial conflicting testimony, and a foundation for its reception had been laid, the denial of permission to proceed with the experiment amounted to an abuse of the trial judge's discretionary powers.

### III.

G.M. argues the trial judge also erred by not admitting the written statements of two employees of Haleakala Motors who testified on its behalf. The statements had been given to an investigator who interviewed them approximately two years before trial. Plaintiffs' counsel, while cross-examining each of them, read portions of the witness' statement that seemed to contradict what he said at trial. Claiming the introduction by plaintiffs of selected parts distorted what the witnesses

---

[6]The trial judge indicated he would permit the jury to view the Monza, which had been driven to the courthouse. We do not think the controlled test conducted in conjunction with the viewing would have been unduly disruptive of the trial.

said to the investigator, G.M. subsequently offered the entire statements as evidence. The objection that they constituted inadmissible hearsay was sustained.

Citing Rule 802.1 of the Hawaii Rules of Evidence (Haw. R. Evid.), G.M. avers the documents were admissible as prior consistent statements of the witnesses.[7] The plaintiffs contend the documents were inadmissible because they were not "offered in compliance with Haw. R. Evid. 613(c)" as required by Haw. R. Evid. 802.1.[8] If the rejection of the statements constituted error, they urge it still "was at best harmless error." The error was harmless, they claim, because one of the witnesses was questioned at length on redirect examination about the portions of his written statement that were read during cross-examination[9] and the other witness was not questioned at all about his on redirect examination. Yet, we fail to see how the prejudice of introducing potentially

---

[7]Haw. R. Evid. 802.1 in relevant part reads:

Rule 802.1   Hearsay exception; prior statements by witnesses. The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

.   .   .

(2) Consistent statement.   The declarant is subject to cross-examination concerning the subject matter of his statement, the statement is consistent with his testimony, and the statement is offered in compliance with rule 613(c) . . . .

[8]Haw. R. Evid. 613(c) in relevant part reads:
Rule 613

(c) Prior consistent statement of witness.   Evidence of a statement previously made by a witness that is consistent with his testimony at the trial is admissible to support his credibility only if it is offered after

(1) Evidence of his prior inconsistent statement has been admitted for the purpose of attacking his credibility, and the consistent statement was made before the inconsistent statement, or

(2) An express or implied charge has been made that his testimony at the trial is recently fabricated or is influenced by bias or other improper motive, and the consistent statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen; or

(3) His credibility has been attacked at the trial by imputation of inaccurate memory, and the consistent statement was made when the event was recent and the witness' memory fresh.

[9]The plaintiffs' brief in relevant part states: "Appellant on redirect questioned Mr. Kawahara at length, line by line, about the parts of the statement he testified to on cross-examination."

misleading portions of recorded utterances could have been cured by further inquiries on the same.

"Verbal utterances must be taken as a whole, not by fragments or by summary." 7 Wigmore, *Evidence* § 2094, at 594 (Chadbourn rev. 1978). For they "are attempts to express ideas in words," and "the thought as a whole, and as it actually existed, cannot be ascertained without *taking the utterance as a whole* and comparing the successive elements and their mutual relations." *Id.* at 595 (emphasis in original). And "[o]ne part [of a writing or recorded statement] cannot be separated and taken by itself without doing injustice, by producing misrepresentation." *Id.* Haw. R. Evid. 106[10] thus provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

The rule is derived from Rule 106 of the Federal Rules of Evidence (Fed. R. Evid.), and is an expression of the common law doctrine of completeness. *See* Commentary to Haw. R. Evid. 106;[11] *see also* 7 Wigmore, *supra,* § 2113, at 654 n. 1. It addresses two important considerations that come into play when a party introduces only a portion of a writing. "The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work delayed to a point later in the trial. *See McCormick* § 56; California Evidence Code § 356." Fed. R. Evid. 106 advisory committee note.

---

[10]Although the focus of the discussion in the briefs was Haw. R. Evid. 802.1, we think the evidentiary rule applicable here is Haw. R. Evid. 106 because we are considering utterances which were part of a written or recorded statement.

[11]The commentary in its entirety reads:
This rule is identical with Fed. R. Evid. 106.

The rule incorporates the common law doctrine of completeness, see McCormick § 56. As the Hawaii Supreme Court said in Holstein v. Young, 10 H. 216, 220 (1896), a party cannot "utilize so much of this evidence as will serve his turn and reject the remainder." Cf. HRCP 32(a)(4), which provides: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced."

The Advisory Committee's Note to Fed. R. Evid. 106 points out: "The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial."

Read literally, the rule gives an appearance of being applicable only at the time a party introduces a part of a writing or recorded statement. But we have no doubt it applies here; for under the doctrine of completeness the "right of the opponent to put in the remainder [of an utterance in writing] is universally conceded," 7 *Wigmore, supra,* § 2113, at 654, and "[t]he rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination *or as part of his own case.*" Fed. R. Evid. 106 advisory committee note (underscoring added). And it matters not "whether or not the remainder required to be introduced is otherwise admissible." E. Cleary, *supra,* § 56, at 145. The trial judge clearly erred in sustaining the plaintiffs' objection that the statements constituted inadmissible hearsay.

The judgment of the circuit court is vacated, and the case is remanded for a new trial.[12]

*Burnham H. Greeley* (*Susan P. Walker* with him on the briefs; *Carlsmith, Wichman, Case, Mukai & Ichiki,* of counsel) for appellant.

*Dennis Niles* (*William M. McKeon* with him on the brief; *Paul, Johnson & Alston,* of counsel) for appellee.

---

[12]We do not find it necessary to discuss the other points of error raised by G.M.