117 P.3d 821

Karl LIFTEE, Plaintiff–Appellee,

v.

Alexene BOYER, Defendant–Appellant,

and

John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Doe Entities 1–10, Defendants.

No. 23760.

Intermediate Court of Appeals of Hawai'i.

Dec. 21, 2004.

Certiorari Granted Jan. 14, 2005.

As Amended Jan. 21, 2005.

Certiorari Dismissed Aug. 4, 2005.

Randall Y. Yamamoto (Gregory Y.P. Tom, Honolulu, and Kristine N. Kinaka with him on the briefs), Watanabe, Ing & Kawashima, for defendant-appellant.

Vladimir Devens (Andrew S. Winer, Honolulu, with him on the brief), Winer Meheula Devens & Bush, for plaintiff-appellee.

WATANABE, Acting C.J., FOLEY, J. and Circuit Judge ALM in Place of BURNS, C.J., Recused, and LIM, J., Recused.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Alexene Boyer (Boyer) appeals the Judgment in favor of Plaintiff–Appellee Karl Liftee (Liftee) filed on August 25, 2000 in the Circuit Court of the First Circuit (circuit court).[1]

Boyer contends the circuit court erred by (1) ruling that the first report prepared by Ronald Vandell, M.D. (Dr. Vandell) was a vicarious admission; (2) denying admission of Dr. Vandell's Addendum Report under Hawaii Rules of Evidence (HRE) Rule 106 or as a business record under HRE Rule 803(b)(6); and (3) refusing to admit Dr. Vandell's Addendum Report based on a lack of authentication as required by HRE Rule 901.

## I.

On the morning of January 26, 1996, while Liftee was riding his bicycle to work along Portlock Road, Boyer struck Liftee with her automobile, causing him to smash into the windshield of Boyer's automobile and then fall to the ground (first accident). Boyer filed a police report that same day. Shortly after the accident, Liftee had pain in his legs, a numb upper body, serious bruising on his chest and right shoulder, and swelling of his right shoulder and collar bone area, but he did not think he had any broken bones. Liftee did not work for seven days following the first accident. The swelling in Liftee's shoul-

1. The Honorable Eden Elizabeth Hifo presided.

der subsided and the pain lessened, but the pain never completely went away. Liftee did not see a physician between January 26, 1996 and March 30, 1996.

On March 30, 1996, Liftee was riding his bicycle along Kuliouou Road when he was hit by a hit-and-run driver (second accident). Liftee fell to the curb. He landed on his right elbow and forearm, causing abrasions, and then rolled over his right shoulder to break his fall. Liftee filed a police report sometime after the accident, but the exact date is not included in the record. Sometime after filing this initial report, Liftee filed a "Follow Up Report" to correct the date of the accident in the initial report.

Liftee was examined by Richard Lau, Jr., M.D. (Dr. Lau) on April 6, 1996. On August 14, 1996, Liftee started seeing Dr. Griffin, a chiropractor, for treatment of pain.

On January 7, 1997, at the request of Boyer's insurance company, Ronald Vandell, M.D. (Dr. Vandell) conducted an independent medical examination (IME) of Liftee. Dr. Vandell prepared his report on January 14, 1997 (Dr. Vandell's first report). On March 7, 1997, Dr. Vandell prepared an Addendum Report (Addendum Report).

On January 8, 1998, Liftee had surgery on his collar bone because he had a non-union fracture (a gap where the collar bone had not healed back together).

On August 27, 1998, Liftee filed a complaint against Boyer for negligence. He filed a First Amended Complaint on September 2, 1998.

Boyer stipulated to liability for the first accident prior to trial. Jury trial began on June 23, 2000. On June 26, 2000, the circuit court ruled that Dr. Vandell's first report was admissible as a vicarious admission because Dr. Vandell was an agent of Boyer.[2] The circuit court also stated that to admit the Addendum Report, Boyer had to call Dr.

Vandell or a custodian of his records as a witness.[3] Boyer failed to do so.

Boyer called Laurie Luczak (Luczak), Senior Claim Representative for Boyer's insurance company, to authenticate the Addendum Report. Luczak was unable to verify who signed the Addendum Report. On June 30, 2000, the circuit court ruled that the Addendum Report was not properly authenticated and was inadmissible.

The jury found in favor of Liftee, and Judgment was entered on August 25, 2000. Boyer timely appealed.

## II.

### A. The circuit court erred, but did not plainly err, in admitting Dr. Vandell's first report.

#### 1. The plain error standard applies.

■ Boyer contends the circuit court erred when it admitted Dr. Vandell's first report after ruling that Dr. Vandell was an agent of Boyer and that his first report was a vicarious admission under HRE Rule 803(a). Liftee argues that Boyer waived any appeal of the admission of Dr. Vandell's first report by failing to object[4] on the grounds that Dr. Vandell's first report was not an admission.

The following exchange took place upon the offering by Liftee's counsel of Dr. Vandell's first report, Plaintiff's Exhibit 119, into evidence:

[THE COURT:] ... [T]he Court will now give the remaining rulings.

And when we get to the part which is applicable to the report of Dr. Vandell, the Court will hear argument as to the admissibility of that document, being Exhibit 119 of Plaintiff's for identification, and the request under Rule 106 of completeness that the amended report or the amendment thereto, being Exhibit 120 for identification, be admitted as well.

---

2. Dr. Vandell's first report attributed Liftee's injuries to the first accident. His Addendum Report attributed the same injuries to the second accident instead of the first, explaining that he was not aware of the second accident when writing his first report. Dr. Vandell's signature on each report appears to have been signed by a different person.

3. Dr. Vandell's first report was authenticated by admission.

4. Liftee also contends that if Boyer did not waive the error, Boyer admitted that Dr. Vandell was her agent.

. . . .

THE COURT: . . . Exhibit 119, which you are offering into evidence. Is that right, [Liftee's Counsel]?

[LIFTEE'S COUNSEL]: Yes, Your Honor.

THE COURT: And, [Boyer's Counsel], objecting for many reasons,[5] including under Rule 106 the rule of completeness, that Exhibit 120, the amendment to the report, that is Exhibit 119, both generated by Vandell must come in.

And the Court, by the way, has reviewed both of these proposed exhibits and finds that 120 is Vandell changing his opinion completely on legal causation on the basis of new information, that being information about the second accident.

And with that understanding, the Court now would hear first from [Liftee's Counsel] as to the admissibility of either or both.

[LIFTEE'S COUNSEL]: Thank you, Your Honor.

First of all, Exhibit 120 has not been authenticated. You will note that the signature on 120 differs from the signature on 119. 119 was authenticated by admission, but right now there is no authentication for 120. I don't think it can come in that way.

Also, Your Honor, there was no new information that led to the [Addendum Report]. If you look at the first report, 119, the Doctor had the police reports for both accidents. He was aware of both accidents at the time he issued his first report.

Second of all the 120 is not an admission—it's not coming in under the exception of the hearsay rule as an exception. The first report 119 is an admission against the defendant opponent. 120 is not. So I don't think there's an exception for it to come in in any event.

And, you know, the reality is that this doctor just didn't want, for no reason—I mean, he had both police reports, he's aware of both accidents in issuing his report and, he just did a 180, and he's not here to testify about that 180 and he can't authenticate that [Addendum Report].

And I saw something on, you know, ABC the other day where State Farm had these doctors issuing reports and these doctors were interviewed and said that's not even my signature. So I'm not going to stipulate to the authenticity of that [Addendum Report].

That's all I have, Your Honor.

THE COURT: [Boyer's Counsel]?

[BOYER'S COUNSEL]: Your Honor, I think Your Honor's read is correct. The January—I'm sorry, Exhibit 119 is not a complete document. In our answer to the request for admissions we stipulated to the fact that, yes, indeed, that was a report dated such and such by Dr. Vandell. We did not stip, however, to the contents therein. It is not, absolutely not, a complete document.

All those extraneous arguments about, well, it might not be his signature or it's not new information, I think on the face of it is clear and there's been no evidence presented to date through Mr. Liftee or anyone else regarding what Mr. Liftee told Dr. Vandell, and we have to go on the face of that document.

And you will note that it specifically states this amends my January—and I'm sorry—my secretary just took it from me—amends his January '97 report because he wasn't told, and that's his testimony.

Now, the fact that he cannot be here to testify or wasn't called, you know, you— you have to throw the dice and take your— your chances.

Now, if you're inclined, however, to rule that it's not admissible, then we have a 403 problem. It is essentially misleading to the jury to—to think that this Vandell had his one report and that he did not have any other opinions nor did he change those opinions.

That's not only misleading, it's also tantamount to probably fraud upon the Court, because this document has been made aware to the Court. Counsel knows of its existence and in fact it was used at the arbitration hearing as well.

5. There is no record, other than this transcript, of the "many reasons."

So if you're inclined, I think the probative value is totally—you just can't allow a portion of that doc to come in—that document to come in without having it complete because it will mislead the jury.

[LIFTEE'S COUNSEL]: May I respond, Your Honor?

THE COURT: Yes.

[LIFTEE'S COUNSEL]: I'm sorry, [Boyer's Counsel], are you done?

[BOYER'S COUNSEL]: Oh, yes. I'm sorry.

[LIFTEE'S COUNSEL]: Your Honor, that's not the—403 is not to be used because one report has been authenticated and can come in under the hearsay rule and say now I'm going to exclude it because I'm going to consider this other addendum that can't come in because it can't be properly authenticated by the doctor. I don't think that's the way 403 is to be used.

If I've got a report that's been properly authenticated by the other side, it clearly comes in under the hearsay rule by a hearsay admission by the party opponent it comes in. We can't authenticate the other report because the doctor's on the mainland or for whatever reason[.]

. . . .

THE COURT: ... What I'd like to know, [Boyer's Counsel], is inasmuch as you did list Dr. Vandell in the answers to interrogatories as a person that you might call as an expert, do you plan to bring him?

[BOYER'S COUNSEL]: No, Your Honor. We left him off our final naming. He was included on plaintiff's, the final naming or the final witness list filed in this—in the trial.

THE COURT: He was included in plaintiff's?

[BOYER'S COUNSEL]: Yes. He's listed as plaintiff's witness.

[LIFTEE'S COUNSEL]: Well, Your Honor, the expert interrogatories, they identified him as being an expert witness that they may call.

[BOYER'S COUNSEL]: That may call.

[LIFTEE'S COUNSEL]: Well, just like they may call [Dr.] Davenport. That's why my whole argument was to strike him, but the Court said, no, there was notice and that's somebody they named. It's not somebody I retained. And I listed him as only as being complete with my naming of witnesses.

THE COURT: Well, how could you purport to call someone else's expert?

[LIFTEE'S COUNSEL]: Why wouldn't I be able to call him? He gave—he issued a report?

[BOYER'S COUNSEL]: He issued two reports.

THE COURT: Well, if they were using him, then you could not call them; right?

[LIFTEE'S COUNSEL]: Well, I think if he gives opinions, once you expose your opinions I think anybody can call the witness at that point. If you're—specially retaining him, then—but, you know, you don't disclose anything, that may be different.

[BOYER'S COUNSEL]: But he was not—if you read on with the answers, we did not say that he was specially retained—specifically retained for purposes of trial.

[LIFTEE'S COUNSEL]: Well, then he's free game for everybody then.

THE COURT: Well, what was his role in any of this litigation from your point of view, [Boyer's Counsel]?

[BOYER'S COUNSEL]: His only role in this litigation was in January of '97 an IME was requested. He examined Mr. Liftee, a report was completed.

When the adjuster received the report, she looked at it and said wait a minute, he doesn't even talk about this March accident. She then recontacted him and asked him, look, what about this March accident.

At that point in time he says I was unaware of a March whatever—March 30th, 1996, accident and then he subsequently produced that [Addendum Report].

[LIFTEE'S COUNSEL]: And, Your Honor, in the first report he lists all the records that he reviewed prior to issuing his first report and he lists both police

reports for both accidents. This guy is absolutely not trustworthy.

[BOYER'S COUNSEL]: Well, you know, it's just like calling apples oranges. I mean, Dr. Lau says over and over again that Mr. Liftee said that he was injured in January, but it's not in Dr. Lau's records that—anyplace.

But this—I think it still goes back to the matter of fairness. You can't have a—a truncated document submitted. It's there. It's only fair that the entire document is submitted or not submitted because to not do so is going to thoroughly mislead the jury. And, in fact, it's a—that's a knowing misleading of—of the jury.

THE COURT: Well, [Boyer's Counsel], do you have anything to say about authentication as to Exhibit 120, the amendment?

[BOYER'S COUNSEL]: The only way we can go about authentication would probably be through then Dr. Tanksley.

[LIFTEE'S COUNSEL]: And, Your Honor, in Dr. Tanksley's report he only refers to a January '97 Vandell report.

[BOYER'S COUNSEL]: No, he talked about the amendment in March. I'm sorry, it's just taken this entire document.

[LIFTEE'S COUNSEL]: I don't think Tanksley is the proper person to be authenticating some other doctor's report.

[BOYER'S COUNSEL]: Well, he's going to—what he will be asked is did you see this report, was it part of the basis of your opinions.

[LIFTEE'S COUNSEL]: Well then, Your Honor, then they're sneaking it in through the back door.

. . . .

[THE COURT:] This is the situation. Do you agree that Exhibit 119, I think you did agree, was authenticated through an admission, [Boyer's Counsel]?

[BOYER'S COUNSEL]: Yes.

THE COURT: Do you agree?

[BOYER'S COUNSEL]: Not the contents thereof, but yes.

THE COURT: Just the—

[BOYER'S COUNSEL]: It is the report of that date.

THE COURT: Okay.

[BOYER'S COUNSEL]: By that guy.

THE COURT: And the Court finds based on your representation that he was doing a Rule 35 IME or medical examination, that that makes him an agent, and therefore it becomes an admission under 803(a) albeit a vicarious admission through an agent.

I believe that the same is true—precisely true of 120, assuming authentication.

And if you look at the signatures on both of them, it appears that neither are actually signed by the Doctor, but by somebody else. And absent an authentication, I don't see how, given an objection to 120 because of lack of authentication, that I could admit 120 into evidence.

But that is not to say that the defendants are precluded from bringing Dr. Vandell as a witness if your final naming also added a catchall that many do, that being any and all witnesses or rebuttal witnesses or the like, any and all witnesses listed by plaintiffs.

Did it?

[BOYER'S COUNSEL]: I think our final naming had all those catchalls.

. . . .

[THE COURT:] We're looking at a file-stamped Defendant Alexene Boyer's Final Naming of Witnesses dated March 21, 2000.

[BOYER'S COUNSEL]: Thank you.

He's named, on page 4.

THE COURT: Page 4 lists as an expert witness Ronald Vandell. Therefore, if you want to get Exhibit 120 in, you've gotta call him or a custodian of his records. Because if you look at page 2, I think you mentioned custodians. Strike it, page 3.

[BOYER'S COUNSEL]: Dr. Vandell resides in California, so if we're gonna charge the jury by Friday afternoon, that's going to be impossible.

THE COURT: Well, there's nothing I can do about it.

[BOYER'S COUNSEL]: Yeah, I understand.

THE COURT: So that's the ruling. And therefore, with the ruling that 11—strike—119 is in and 120 would be in if there were authentication....

....

[THE COURT:] And as previously indicated, pursuant to page 3 of the final naming of defendants, item 10 says custodian of records for witnesses named in sections 1 and 2 may testify as to authenticity of records. Section 2 is the expert witnesses section which includes as the first witness listed Ronald Vandell, M.D., with a Waialae Avenue address.

So if said custodian authenticates 120 during the defendant's side of the case or at any other time, then 120 will come into evidence. And that's the ruling.

As of now, 119 is received into evidence.

(Footnote added.)

Hawaii Rules of Evidence Rule 103 states in relevant part:

**Rule 103   Rulings on evidence.** (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

....

(d) Plain error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

Liftee offered Dr. Vandell's first report as an admission against or by a party-opponent. The circuit court admitted Dr. Vandell's first report into evidence as a vicarious admission under HRE Rule 803(a)(2). Boyer objected to the introduction into evidence of the first report without the Addendum Report on the grounds of HRE Rule 403 (misleading the jury) and Rule 106 (completeness). Boyer did not object on the ground that Dr. Vandell's first report was not an admission under HRE Rule 803(a). We, therefore, review Boyer's point of error under the plain error standard of review.

**2.   Dr. Vandell's first report was not a vicarious admission by an agent.**

We first consider whether the circuit court erred in ruling that Dr. Vandell's first report was an HRE Rule 803(a)(2)(B) vicarious admission by an agent of Boyer before applying the plain error standard.[6] Hawai'i courts use the control test to determine if a party is an employee or independent contractor. *Potter v. Hawai'i Newspaper Agency,* 89 Hawai'i 411, 419, 974 P.2d 51, 59 (1999) (control test applied in all worker's compensation cases). "Under the control test, an employment relationship is established when the person in whose behalf the work is done has the power, express or implied, to dictate the means and methods by which the work is to be accomplished." *Locations, Inc. v. Hawai'i Dep't. of Labor and Indus. Relations,* 79 Hawai'i 208, 211, 900 P.2d 784, 787 (1995) (internal quotation marks and citation omitted).

Hawai'i's courts have not previously addressed the question of whether a physician conducting an IME is an agent of the insurance company that retained the physician or is an independent contractor. In *Kelley v. Rossi,* 395 Mass. 659, 481 N.E.2d 1340 (1985), the Supreme Judicial Court of Massachusetts stated that "the very nature of a physician's

**6.** Hawaii Rules of Evidence (HRE) Rule 803 states in relevant part:

**Rule 803   Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a) Admissions

....

(2) Vicarious admissions. A statement that is offered against a party and was uttered by (A) a person authorized by the party to make such a statement, (B) the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship, or (C) a co-conspirator of the party during the course and in furtherance of the conspiracy.

function tends to suggest that in most instances he will act as an independent contractor." *Id.* at 662, 481 N.E.2d at 1342. The court noted that "a physician is not a servant where the principal cannot control the details of the physician's activities." *Id.* at 662, 481 N.E.2d at 1343. *See Overstreet v. Doctors Hosp.,* 142 Ga.App. 895, 897, 237 S.E.2d 213, 215 (1977); *Wood v. Standard Prods. Co.,* 671 F.2d 825, 830–31 (4th Cir. 1982); *Walker v. United States,* 549 F.Supp. 973, 976–77 (W.D.Okla.1982).

In *Paradoa v. CNA Ins. Co.,* 41 Mass.App. Ct. 651, 672 N.E.2d 127 (1996), CNA, an insurance company, made a request through a third party to arrange a medical examination of Paradoa, who was receiving workers' compensation disability payments from CNA. The court in *Paradoa* held there was no logical connection on the issue of control because the insurance company's arrangement did not go beyond requesting an examination, the examination was not conducted at the office of the insurance company, and all of Paradoa's responses were made to the third party, not to CNA. *Id.* at 654, 672 N.E.2d at 130.

There is nothing in the record to suggest that Boyer controlled Dr. Vandell in the performance of his medical examination of Liftee. Under the control test, without a showing that Dr. Vandell was subject to the control of Boyer, the circuit court could not find that Dr. Vandell was an agent of Boyer. The record does not support either the circuit court's finding that Dr. Vandell was an agent of Boyer or the circuit court's admitting, pursuant to the finding, Dr. Vandell's first report under HRE Rule 803(a)(2)(B) (statement made by a party's agent). We conclude the circuit court erred by admitting Dr. Vandell's first report under HRE Rule 803(a) as a vicarious admission by a party's agent.

   3.  **Dr. Vandell's first report was not a vicarious admission by a person authorized by the party to make such a statement.**

■  Next we look to whether Dr. Vandell's first report was admissible under HRE

Rule 803(a)(2)(A) as a vicarious admission by a person authorized by the party to make such a statement.[7]

The treatment of vicarious admissions in HRE Rule 803(a)(2) follows that of the Federal Rules of Evidence (FRE) Rule 801(d)(2). Commentary to HRE Rule 803. Federal Rules of Evidence Rule 801(d)(2), which combines HRE Rule 803(a)(1) and HRE Rule 803(a)(2), provides:

**Rule 801.  Definitions**

. . . .

   **(d)  Statements which are not hearsay.** A statement is not hearsay if—

. . . .

   (2) **Admission  by  party-opponent.** The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

In *Collins v. Wayne Corp.,* 621 F.2d 777 (5th Cir.1980), the Fifth Circuit Court of Appeals held that the district court erred in not allowing the plaintiffs to offer the deposition of Greene (Wayne Corp.'s expert witness) into evidence as an admission of Wayne Corp. *Id.* at 781. The court wrote:

---

7.  The first report was not admissible under HRE Rule 803(a)(2)(C) (statement made by co-conspir-     ator) because there was no evidence that Dr. Vandell and Boyer were co-conspirators.

Wayne hired Greene to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that Wayne had employed him to perform. His deposition, therefore, was an admission of Wayne. Greene's deposition testimony was not, of course, a binding judicial admission, and had the district court admitted Greene's deposition as an admission Wayne would have had an opportunity to explain why some of Greene's conclusions were not consistent with Wayne's position at trial.

*Id.* at 782 (footnote omitted).

In *Kirk v. Raymark Indus., Inc.,* 61 F.3d 147 (3d Cir.1995), the Third Circuit Court of Appeals distinguished *Collins* based on agency principles. In *Kirk,* the plaintiff read to the jury prior trial testimony of a defense expert witness in an unrelated case as an admission by a party-opponent under FRE 801(d)(2)(C). 61 F.3d at 163. The court in *Kirk* stated:

Kirk misconstrues the entire premise of calling expert witnesses. In theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness even if one disagrees with the testimony of the expert. Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony.

Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.

*Id.* at 164 (citations and footnote omitted).

In *Glendale Fed. Bank, FSB v. United States,* 39 Fed. Cl. 422 (1997), the United States Court of Federal Claims held that the deposition testimony of a party's expert witness was inadmissible hearsay if the party, who had retained the witness, withdrew the witness. *Id.* at 425. The court stated:

FRE 801(d)(2)(C) applies to a person who is not an agent but is "authorized" to speak. The depositions sought to be used here are from non-agents. They are classic independent experts brought in for trial. With a non-agent under (C) there may be an issue of the scope of the authorization to speak that need not be reached under (D). Here, however, we need not reach that issue since the depositions given were clearly authorized.[FN*]

The expert witness, testifying under oath, is expected to give his own honest, independent opinion. Even at the time of his deposition he remains autonomous. He is not the sponsoring party's agent at any time merely because he is retained as its expert witness. By the time trial begins, we may assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them. At the beginning of trial we may hold the parties to a final understanding of their case and hence an authorization of their expert witnesses who have not been withdrawn. At this point when an expert is put forward for trial it is reasonable and fair to presume they have been authorized. This of necessity includes prior deposition testimony of that expert. This is also a rational and fair point at which to draw the authorization line.

---

[FN*] At this time the authorization is only tentative as the whole purpose of the deposition is to further an understanding of the case. Once the deposition process is concluded, the parties still need time to analyze the case in light of all the depositions and other discovery. For eager lawyers this may go on to the eve of trial. It is fair, however, to conclude that once trial begins the authorization decisions are made and become irrevocable, and the statements are either admissions or hearsay.

*Id.* at 424–25 (citations omitted).

The rule in *Glendale,* that the deposition of a party's expert witness is inadmissible hearsay when the expert is withdrawn prior to trial, is supported by *In re Hidden Lake Ltd.*

*P'ship*, 247 B.R. 722 (Bankr.S.D.Ohio, E.Div., 2000), and *Taylor v. Kohli*, 252 Ill.App.3d 852, 192 Ill.Dec. 104, 625 N.E.2d 64 (1993).

In *In re Hidden Lake*, an insurance company asked the court to admit into evidence portions of the deposition of an expert witness who had been identified by the debtor, but not called at trial. 247 B.R. at 724. The parties cited *Collins* and *Kirk* to support their arguments about the admissibility of the expert's deposition. *In re Hidden Lake*, 247 B.R. at 724. The court concluded that the deposition testimony of the expert witness identified by the debtor, but not called at trial, was inadmissible hearsay. *Id.*

In *Taylor*, the Appellate Court of Illinois, First District, Third Division, held that it was error to admit portions of the deposition of plaintiff's expert witness when plaintiff had notified defendant nineteen months before trial of his intent to abandon the expert and not call the expert at trial. 252 Ill. App.3d at 856–57, 625 N.E.2d at 67–68.

In her witness list filed June 9, 2000 (prior to the start of trial), Boyer did not include Dr. Vandell as an expert witness to be called at trial.[8] During the June 29, 2000 pretrial conference, Boyer also represented to the circuit court that she would not call Dr. Vandell at trial. Liftee did not call Dr. Vandell to testify as an expert witness. Dr. Vandell's first report clearly does not fall within HRE Rule 803(a)(2)(A) as a vicarious admission by a person authorized by the party to make such a statement.

### 4. Whether the discretionary power of this court should be exercised to notice plain error.

■ We next examine whether our discretionary power to notice plain error ought to be exercised under *Okada Trucking Co. v. Bd. of Water Supply*, 97 Hawai'i 450, 40 P.3d 73 (2002). In *Okada Trucking*, the Hawai'i Supreme Court stated that

the plain error doctrine represents a departure from the normal rules of waiver

that govern appellate review, and, as such, that an appellate court should invoke the plain error doctrine in civil cases only when justice so requires. As such, the appellate court's discretion to address plain error is always to be exercised sparingly. And, indeed, in civil cases, we have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

*Id.* at 458, 40 P.3d at 81 (internal quotation marks, citations, brackets, and ellipsis omitted; block quote format changed).

■ The first factor to be considered in invoking the plain error rule is whether consideration of the issue not raised at trial requires additional facts. *Id.* This "first factor is based on the tenet that an appellate court should not review an issue based upon an undeveloped factual record." *Montalvo v. Lapez*, 77 Hawai'i 282, 290–91, 884 P.2d 345, 353–54 (1994). Here, the record sufficiently raises the issue of whether Dr. Vandell's first report was a vicarious admission of Boyer.

The second factor set forth in *Okada Trucking* asks whether the "resolution will affect the integrity of the trial court's findings of fact." 97 Hawai'i at 458, 40 P.3d at 81. We conclude the second factor was met because the admission into evidence of Dr. Vandell's first report affected the integrity of the jury's findings as to the damage Liftee suffered as a result of the first accident.

As to the third and final factor set forth in *Okada Trucking*, "whether the issue is of great public import," we conclude that the admission of Dr. Vandell's first report did not threaten the integrity of our jury system. 97 Hawai'i at 458, 40 P.3d at 81. In *Montalvo*, the Hawai'i Supreme Court noticed plain error when the trial court failed to correctly

8. The circuit court found that Boyer had listed Dr. Vandell as an expert witness expected to testify at trial on Boyer's "Final Naming of Witnesses" filed March 21, 2000. On February 17, 2000, Liftee filed his "Final Naming of Witnesses," which did not specifically list Dr. Vandell as a witness. On June 8, 2000, prior to the start of trial, Liftee filed his "Plaintiff's Witness List," which listed Dr. Vandell as an expert witness for Liftee.

instruct the jury, which allowed the jury to base its determination of damages on speculation and conjecture. 77 Hawai'i at 289–92, 884 P.2d at 352–55. In the instant case, the extent to which the jury may have been misled as to damages Liftee suffered as a result of the first accident could have been avoided had Boyer simply called Dr. Vandell as a witness—as suggested by the circuit court.

The record in this case does not require us to exercise our discretion in invoking the plain error doctrine to address the circuit court's erroneous ruling that Dr. Vandell's first report was a vicarious admission by an agent of Boyer. *Okada Trucking,* 97 Hawai'i at 458, 40 P.3d at 81. Justice does not require us to invoke the plain error rule in this case.

### 5. Dr. Vandell's first report was not a statement of medical diagnosis or treatment.

■ Liftee argues that if Dr. Vandell's first report was not a vicarious admission, then it was admissible under HRE Rule 803(b)(4), which provides:

**Rule 803   Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(b) Other exceptions.

. . . .

(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Liftee offered Dr. Vandell's first report as expert opinion as to the cause of Liftee's injuries, not for Liftee's statements contained in the report that were made for purposes of medical diagnosis or treatment. Therefore, Liftee's contention that Dr. Vandell's first

report was admissible under HRE Rule 803(b)(4) is meritless.

### B.   The circuit court did not err when it excluded the Addendum Report for a lack of foundation.

■ Boyer contends the circuit court abused its discretion by refusing to admit the Addendum Report for lack of the authentication required under HRE Rule 901. Boyer contends the Addendum Report should have been admitted as a business record under HRE Rule 803(b)(6) (1993).

"[T]he [circuit] court's ruling on authentication of objects under HRE Rule 901 is subject to review for abuse of discretion." *Kam Fui Trust v. Brandhorst,* 77 Hawai'i 320, 326, 884 P.2d 383, 389 (App.1994). "[A]uthenticity concerns the genuineness of an item of evidence, not its admissibility." *Orr v. Bank of America,* 285 F.3d 764, 776 (9th Cir.2002). Even if the Addendum Report were admissible as a business record under HRE Rule 803(b)(6), authentication would still be required under HRE Rule 901. The crux of the authenticity requirement is whether there is evidence which supports the conclusion that "an object is the very thing it purports to be." *Kam Fui Trust,* 77 Hawai'i at 326, 884 P.2d at 389 (internal quotation marks and citation omitted).

Hawaii Rules of Evidence Rule 901 states in relevant part:

**Rule 901   Requirement of authentication or identification.** (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

Hawaii Rules of Evidence Rule 901 is identical to FRE 901 except for the substitution in subsection (b)(10) of state authority for federal authority. Commentary to HRE Rule

901. The most direct method of authenticating an object is through the "testimony of a witness who has some basis extrinsic to the item itself for asserting its authenticity." Commentary to HRE Rule 901. It is "another way of saying that there exists evidence, independent of the 'hearsay' statement itself, to establish that the document is what [a party] claims it to be, namely, a statement by the [maker]." *United States v. Vigneau,* 187 F.3d 70, 78 n. 7 (1st Cir.1999). "A document can be authenticated under Rule 901(b)(1) by a witness who wrote it, signed it, used it, or saw others do so." *Orr,* 285 F.3d at 774 n. 8 (brackets omitted) (quoting 31 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure: Evidence* § 7106 at 43 (2000)).

Luczak's testimony did not authenticate the Addendum Report. Luczak was not the author of the Addendum Report and had no basis extrinsic to the document itself to state that the Addendum Report was authored by Dr. Vandell.

In *United States v. Jones,* 107 F.3d 1147 (6th Cir.1997), Jones objected to the authentication of a birthday card she allegedly had signed and mailed to a prosecution witness (Cronin). *Id.* at 1149. The prosecution called Cronin as a witness to authenticate the card. Cronin testified that the card was signed "Kathie Jones" and contained references to his daughter-in-law and granddaughter that no one else could have written. *Id.* at 1150. Cronin also stated that he was not familiar with Jones's handwriting. *Id.* The court held that FRE Rule 901(b)(2) (nonexpert opinion as to genuineness of handwriting) was not applicable to authentication of the card, but FRE Rule 901(b)(4) (distinctive characteristics) was applicable. The court further held that the district court did not abuse its discretion by finding the card was properly authenticated because Cronin expressed the opinion that the card was written by Jones as it was signed "Kathie Jones" and it contained references to Cronin that no one else could have written. The court concluded that the card had "distinctive characteristics" that met the authentication requirement of FRE Rule 901(a)(4). *Jones,* 107 F.3d at 1150.

In the instant case, the circuit court found that persons other than Dr. Vandell signed Dr. Vandell's first report and the Addendum Report. Luczak did not testify that the Addendum Report had distinctive characteristics that would authenticate it under HRE Rule 901(b)(4). Given the lack of evidence attesting to Dr. Vandell's signature on the Addendum Report and the lack of testimony about any distinctive characteristics of the Addendum Report, the circuit court did not abuse its discretion by requiring Boyer to produce testimony from Dr. Vandell or his custodian of records that the Addendum Report was in fact made by him.

## C. Evidence admitted under HRE Rule 106 is subject to the authentication requirement under HRE Rule 901.

■ Boyer contends that despite the lack of authentication, the Addendum Report should have been admitted into evidence under HRE Rule 106 to explain the context of Dr. Vandell's first report. Liftee contends that authentication is required before HRE Rule 106 can be used to introduce evidence.

Hawaii Rules of Evidence Rule 106 states:

**Rule 106 Remainder of or related writings or recorded statements.** When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

"The rule incorporates the common law doctrine of completeness." Commentary to HRE Rule 106; *see Holstein v. Young,* 10 Haw. 216, 220 (1896) (a party "cannot utilize so much of this evidence as will serve his turn and reject the remainder"). "The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Commentary to HRE Rule 106 (quoting the Advisory Committee's Note to FRE Rule 106).

Boyer cites *Monlux v. General Motors Corp.,* 68 Haw. 358, 714 P.2d 930 (1986), to

support her contention that unauthenticated evidence can be admitted under HRE Rule 106. In *Monlux,* the Hawai'i Supreme Court stated that "it matters not whether or not the remainder required to be introduced is otherwise admissible." 68 Haw. at 367, 714 P.2d at 936 (internal quotation marks and citation omitted). However, the issue in *Monlux* was *whether hearsay was admissible* under HRE Rule 106, not the *requirement for authentication* as in the instant case.

In *State v. Corella,* 79 Hawai'i 255, 900 P.2d 1322 (App.1995), the Intermediate Court of Appeals followed the Hawai'i Supreme Court's holding in *Monlux,* stating that the "objective of Rule 106 is to ensure that a writing should be considered as a whole when the thought as a whole, and as it actually existed, cannot be ascertained without taking the utterance as a whole and comparing the successive elements and their mutual relations." 79 Hawai'i at 263–64, 900 P.2d at 1330–31 (quoting *Monlux,* 68 Haw. at 366, 714 P.2d at 935). However, like *Monlux, Corella* also does not stand for the proposition that unauthenticated evidence may be admitted under HRE Rule 106.

Hawaii Rules of Evidence Rule 106 is identical to FRE Rule 106. Commentary to HRE Rule 106; *Monlux,* 68 Haw. at 366 n. 11, 714 P.2d at 935 n. 11.

The United States Supreme Court discussed the purpose of FRE Rule 106 in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The Supreme Court stated that the rule of completeness allows the remainder to be put in "to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." *Id.* at 171, 109 S.Ct. at 451 (internal quotation marks and citation omitted). However, the Supreme Court addressed the issue in the context of relevance and did not specifically address hearsay or authenticity. Additionally, the Court found it unnecessary to apply FRE Rule 106 in *Beech Aircraft. Id.* at 172, 109 S.Ct. at 451.

The majority of federal courts of appeal follow the order of proof viewpoint of Rule 106, holding that the rule does not allow the admission of otherwise inadmissible evidence.

*E.g., United States v. Collicott,* 92 F.3d 973, 983 (9th Cir.1996) (FRE "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence"); *United States v. Wilkerson,* 84 F.3d 692, 696 (4th Cir.1996) (FRE Rule 106 "would not render admissible the evidence which is otherwise inadmissible under the hearsay rules"); *Phoenix Assocs. III v. Stone,* 60 F.3d 95, 103 (2d Cir.1995) (FRE "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence"); *United States v. Woolbright,* 831 F.2d 1390, 1395 (8th Cir.1987) (FRE Rule 106 does not allow court to admit unrelated hearsay that does not come under a hearsay exception); *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982) (in reference to relevancy of oral statement, FRE Rule 106 "covers an order of proof problem; it is not designed to make something admissible that should be excluded").

A minority of courts, which includes Hawai'i, are more expansive and admit otherwise inadmissible hearsay evidence.

The Court of Appeals for the District of Columbia Circuit in *United States v. Sutton,* 801 F.2d 1346 (D.C.Cir.1986), commented:

Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence *when the court finds in fairness that the proffered evidence should be considered contemporaneously.* A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.

*Id.* at 1368 (emphasis added).

In *United States v. LeFevour,* 798 F.2d 977 (7th Cir.1986), the Seventh Circuit Court of Appeals ruled:

If otherwise inadmissible evidence is necessary to correct a misleading impression, then either it is admissible for this limited purpose by force of Rule 106, the view taken in 21 Wright & Graham, Federal Practice and Procedure § 5072, at p. 344 (1977), or, if it is inadmissible (maybe because of privilege), the misleading evidence must be excluded too.... *Rule 106 was not intended to override every privilege*

*and other exclusionary rule of evidence in the legal armamentarium* [.]

798 F.2d at 981 (emphasis added).

It is apparent that although these courts will allow otherwise inadmissible hearsay evidence, the basis for the admittance is fairness. However, none of the minority courts have gone as far as to say that unauthenticated evidence should be admitted under Rule 106. Boyer's argument that unauthenticated evidence may be admitted under HRE Rule 106 is not supported by the cases that adhere to the rule stated in *Monlux* and *Corella.* We decline Boyer's invitation to expand the ruling in *Monlux* to apply to the admission of a document without authentication.

### III.

The Judgment filed on August 25, 2000 in favor of Liftee is affirmed.

